Everett NEWTON, Appellant

v.

**Dallas MEADE, Appellee.**

No. 05–02–01845–CV.

Court of Appeals of Texas, Dallas.

Sept. 9, 2004.

**572**

John Glenn Meazell, Plano, for Appellant.

Michael D. Gorman, Dallas, for Appellee.

Before Justices WHITTINGTON, WRIGHT, and BRIDGES.

## OPINION

Opinion by Justice BRIDGES.

Everett Newton appeals the trial court's judgment, rendered after a jury verdict, awarding Dallas Meade contract-based damages for $525 and $17,500 in attorney's fees. The jury also awarded $152 as compensation for Meade's malpractice claim, but Meade elected the contract damages as his remedy. Newton asserts that Meade's cause of action for breach of con-

tract is not legally cognizable, arguing that Meade's claim sounds in tort only. He argues the award of damages and attorney's fees based on breach of contract must be reversed. We agree. We reverse the judgment of the trial court and render judgment awarding damages on the malpractice claim.

### Facts

Dallas Meade received a traffic ticket from the City of Coppell in early January 2000. He testified that he called the law offices of Everett Newton and was informed they handled tickets for Coppell, the fee was $40, and he would be notified when a court date was set. Meade sent Newton the citation and a check for $40.

On Saturday, March 18, 2000, Meade received a letter from the clerk for Coppell, stating that the city was processing an additional complaint for failure to appear on the due date for the traffic ticket—as well as a warrant for his arrest. The following Monday, Meade called Newton's office before it opened. Receiving no call back by 10:00 a.m., he called again and was told they would call back when they found his file. At 2:00 p.m. he called again, and they hung up on him. He went to Newton's office and spoke with the office manager, Cecilia Bertaud. Meade testifies she told him they had sent a letter of declination, informing him Newton does not handle tickets from Coppell. Meade told her he never received a letter. He insisted on seeing Newton, and an appointment was made for March 21. In the meantime, Meade arranged for Randall Scott to represent him in the matter, paying Scott $152 for fees and the extra costs owing to the city, incurred as a result of the initial failure to appear.[1]

---

1. Concerning the failure to appear, Meade's own expert testified that "mistakes happen," and that the first thing a "reasonable and prudent" attorney would do in the circumstances would be to file a bond promptly with the city to prevent the arrest warrant from

According to Meade, when he arrived for his appointment with Newton, Bertaud informed him that Newton was in court. Bertaud testified that no appointment was ever made and that the only time Meade came to the office was a drop-in visit on March 21. Bertaud gave Meade a copy of a letter from Newton to Meade, dated January 14, which stated Newton was declining the representation and purportedly enclosed "your citation and your fee payment."[2] Meade attempted to stay until Newton returned but left when security was called. Meade testified that he wanted an apology—for how rudely he was treated by Newton's staff—as well as reimbursement for additional costs incurred owing to the failure to appear. Newton never met or spoke with Meade. Rather, the next day, Newton sent Meade a letter with a $40 check to reimburse the initial fee payment.

Subsequently, Meade retained an attorney who sent Newton a demand letter in April seeking $2,002 in damages for (1) $452 for Scott's fee and costs, (2) $1,225 for Meade's time (calculated at his attorney's rate of $175), and (3) $375 in attorney's fees in the instant matter. The record testimony indicates that at the time the letter was sent, Meade had incurred out-of-pocket expenses of around $527 ($152 for Scott and $375 for the attorney in this case). Newton testifies that in response to the demand letter he orally offered $750, but Meade refused it. Meade disputes that Newton made such an offer. The evidence shows Meade's demand increased thereafter to nearly $9,000, and at one point upwards of $35,000. Meade insists that he sought many times to settle

the case, but Newton never responded with a settlement offer.

The case proceeded to trial in July 2002. The jury found no violation of the DTPA, that Newton had committed legal malpractice with damages in the amount of $152, and that Newton had breached his contract with Meade, resulting in contract damages of $525 and attorney's fees of $17,500. The trial judge awarded the contract damages and attorney's fees, and Newton appealed.

### Tort or Contract

■ Newton argues that Meade fails to state a cause of action for contract, and thus the trial court erred in awarding contract damages. He argues that the award of attorney's fees was also improper because the statutory prerequisite for awarding attorney's fees is a claim based on contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997) (claimant eligible to recover attorney's fees if underlying claim is based on "oral or written contract"). Newton contends that a failure of an attorney to take action on a client's behalf sounds in tort, not contract, relying on *Black v. Wills*, 758 S.W.2d 809, 814 (Tex.App.-Dallas, 1988, no writ). Newton further argues this case is like *Gabel v. Sandoval*, 648 S.W.2d 398 (Tex.App.-San Antonio 1983, writ dism'd), where the attorney did not file suit for the plaintiff but insisted that the plaintiff had received proper notice that their attorney-client relationship had ended before the filing date. The *Gabel* court held there was no cognizable contract claim, only a tort claim for malpractice that was subject to the two-year statute of limitations. *Id.* at 399.

---

issuing. That would place the ticket back on the court docket, and return the client to the position he was in before the failure to appear.

**2.** The evidence showed that Meade's $40 check was cashed during the third week of February 2000.

Meade insists that his cause of action does not sound exclusively in tort. That is, he does not merely allege that Newton performed poorly, but that by Newton's failing to file an appearance on Meade's behalf, he utterly failed to perform the contract for legal services.

## Characterization of Claims Against Attorneys

A cause of action arising out of bad legal advice or improper representation is one for legal malpractice. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex.App.-Dallas 1995. writ denied). The issue in a malpractice action is whether the attorney exercised that degree of care, skill, and diligence as lawyers of ordinary skill and knowledge commonly possess and exercise. *Id.* (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988)).

In *Black*, the attorney failed to appear for the client's trial. The client sued, alleging breach of contract as well as negligence. *Black*, 758 S.W.2d at 811–12. This Court determined that the plaintiff's causes of action, whether or not framed in terms of contract, sounded in tort only. *Id.* at 814 (applying two-year statute of limitations applicable to tort); *see Am. Med. Elecs., Inc. v. Korn*, 819 S.W.2d 573, 576 (Tex.App.-Dallas 1991, writ denied) (cause of action framed as breach of implied warranty of oral contract sounded in tort).

In *Sullivan*, the plaintiff sued his attorneys for both negligent legal practice and fraud with respect to the attorneys' billing. The attorneys argued that Texas courts treat all claims against attorneys as malpractice claims, which sound in tort. The Court explicitly rejected a blanket rule and held that the plaintiff had stated a cause of action for both negligent legal practice and for fraud with respect to its billing practices. *Sullivan*, 943 S.W.2d at 482–83.

In reaching that determination, the *Sullivan* Court examined other opinions recognizing causes of action in addition to legal malpractice claims, including *Jampole v. Matthews*, 857 S.W.2d 57 (Tex. App.-Houston [1st Dist.] 1993, writ denied), and *Estate of Degley v. Vega*, 797 S.W.2d 299 (Tex.App.-Corpus Christi 1990, no writ). *Jampole* involved a fee agreement calling for payment of a specified contingency fee. *Jampole*, 857 S.W.2d at 59. Jampole orally agreed to a higher fee, and when the case settled, the attorneys took the higher fee. Jampole sued the attorneys, asserting claims for, among other things, breach of contract, breach of fiduciary duty and overreaching, as well as fraud. Rejecting the argument all the claims sounded in tort, the *Jampole* court held that the plaintiff had stated distinct causes of action for fraudulent billing and for a breach of contract relating to excessive fees for services. *Id.* at 62. Similarly, in *Vega*, an administratrix alleged that the estate's attorney affirmatively misled her about the effect of a fee agreement. *Vega*, 797 S.W.2d at 301. The *Vega* court held that the plaintiff had stated a cause of action for fraud. *Id.* at 302–03.

In the context of characterizing claims against lawyers, the courts occasionally refer to the "impermissible fracturing" of a malpractice claim into additional putative causes of action. *See, e.g., Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The *Deutsch* court analyzed each of numerous allegations to ascertain whether they constituted a separate claim for breach of fiduciary duty or whether the gist of the claim implicated the tort standard of care, i.e., whether the attorney "failed to exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess." *Id.* It concluded that the allegations of

conflict of interest and failure to withdraw as counsel stated an independent cause of action for breach of fiduciary duty. *Id.* at 190.

### Conclusion

This case does not invoke an independent contract claim. Meade does not point us to facts analogous to the contractually defined billing arrangements at issue in *Sullivan* and *Jampole*. Meade's claim is based on the tort standard of care. Newton's conduct in failing to file an appearance raised the question whether he failed to exercise that degree of care, skill, or diligence that is a lawyer's professional duty. Having failed to establish a contract claim, Meade is not eligible to recover damages for breach of contract or attorney's fees based on contract under section 38.001(8) of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8). Accordingly, we reverse the judgment and render judgment awarding Meade $152, in accordance with the jury verdict on the legal malpractice claim, as well as pre-and post-judgment interest on that amount.[3]

In two additional issues, Newton raises alternative grounds for reversing the award of attorney's fees. Because we reverse the award on other legal grounds, we need not reach Newton's additional issues.

---

3. The record reveals the escalation of this conflict. Meade testified that what he really wanted in March was to talk with Newton and, he hoped, get an apology for how Newton's staff had treated him. Meade testified that the office manager told him that it would be a waste of Newton's time to talk with him, because Newton had money-paying clients. Newton never spoke directly to Meade to let him tell his story. By early April, Meade had accumulated around $527 in additional attorneys' fees, but he demanded $2,000. In response, Newton testified, he thought that "these guys were trying to extort money from me," given that "Mr. Meade had suffered no harm." Three years later, Meade's attorney's fees were upwards of $17,500. Newton asserts in his brief that his attorney has accrued upwards of $20,000 in fees.