Karen Brock **MURPHY**, Amelia Brock Banner, and Jody Brock Irwin, Individually and as Co–Independent Executors of the Estate of Doris Berglund Brock and as Cotrustees of the Brock Family Trust, Appellants

v.

G. Michael **GRUBER**, William D. Elliott, and Kane, Russell, Coleman & Logan, P.C., Appellees.

No. 05–05–01013–CV.

Court of Appeals of Texas, Dallas.

Dec. 13, 2007.

B. Mills Latham, Glast, Phillips & Murray, San Antonio, for Appellant.

Carol E. Farquhar, Alan S. Loewinsohn, Michael Blair Hopkins, Loewinsohn Flegle Deary, L.L.P., Dallas, for Appellee.

Before Justices O'NEILL, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

In this case, we decide whether certain claims pleaded as breach-of-fiduciary-duty and fraud claims are really impermissibly fractured professional negligence [1] claims barred by the two-year statute of limitations. Karen Brock Murphy, Amelia Brock Banner, and Jody Brock Irwin, individually and as co-independent executors of the estate of Doris Berglund Brock and as co-trustees of the Brock Family Trust (the Brocks), appeal the trial court's summary judgment orders dismissing their breach-of-fiduciary-duty and fraud claims against G. Michael Gruber, William D. Elliott, and Kane, Russell, Coleman & Logan, P.C. (the Lawyers). We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Charles D. Howell was a limited partner in VSMI/Blockbuster Ltd. I, a limited partnership formed to own and operate Blockbuster franchises. He sued various defendants for selling the general partnership interests and assets back to the franchiser, Blockbuster Entertainment Corp., without appropriately compensating the limited partners. The Lawyers represented Howell in that lawsuit and obtained a $123 million judgment, consisting of $13 million in actual damages and $110 million in punitive damages.

The Brocks contend here that B. Coleman Renick, another limited partner in VSMI/Blockbuster Ltd. I, was the business partner and trusted confidant of their father, Harry Joe Brock, who was also a limited partner.[2] After Brock's death, his widow and their children (the Brocks) continued to look to Renick for advice and counsel. Renick became interested in pursuing claims similar to Howell's and encouraged the Brocks to join the lawsuit. Renick told the Brocks that the Lawyers, specifically Gruber, expressed great confidence in the value of their claims. Gruber also stated that most of the issues had been decided in the Howell case and the next partnership group would have little to do to prove damages. Because the Brocks trusted Renick, they agreed to join the lawsuit. The Brocks looked to Renick to guide them through the lawsuit and allowed him to act as their agent in dealing with the Lawyers. As the case progressed, the Blockbuster defendants filed a counterclaim against Renick. The Law-

---

1. Appellees use the term "malpractice" to refer to a claim for professional negligence. *See* BLACK'S LAW DICTIONARY 978 (8th ed.2004) (defining "malpractice" as "[a]n instance of negligence or incompetence on the part of a professional"). We refer to the negligence claim as professional negligence for purposes of clarity.

2. We recite the facts in accordance with the standard requiring that, when reviewing a summary judgment against a plaintiff based on the pleadings, we view the facts in the pleadings in the light most favorable to the plaintiff. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

yers negotiated a $7.5 million settlement in the case, and the trial court entered a final judgment on August 14, 1997 based on the parties' settlement agreement.

On July 9, 2001, the Brocks sued Renick and the Lawyers for, among other claims, breach of fiduciary duty.[3] The Brocks claimed the Lawyers represented them with divided loyalties, failed to inform them of material facts as soon as a conflict arose, and failed to make a full and fair disclosure of every facet of a proposed settlement of the Blockbuster case. They amended their petition on April 21, 2004, to add a claim for fraud against the Lawyers. The Brocks sought fee forfeiture and imposition of a constructive trust as damages.

The Lawyers moved for summary judgment on the breach-of-fiduciary-duty claim, asserting the Brocks' claim constituted one claim for legal malpractice and the statute of limitations on that claim had expired. The trial court agreed and granted the Lawyers' motion on that basis. The Lawyers filed a second motion for summary judgment on the Brocks' fraud claim, arguing that claim was also barred because it was an impermissible fracturing of the legal malpractice claim, which the court had already concluded was time barred, or, alternatively, because it was first asserted more than four years after the final judgment in the underlying lawsuit. The trial court granted the second motion for summary judgment without stating the basis for its ruling. This appeal followed.

## II. Issue Presented

In a single issue, the Brocks contend the trial court erred when it concluded their breach-of-fiduciary-duty and fraud claims are barred by the two-year statute of limitations that applies to negligence claims.

## III. Standard of Review

■ The function of summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Turner v. Church of Jesus Christ of Latter–Day Saints*, 18 S.W.3d 877, 885 (Tex.App.-Dallas 2000, pet. denied) (citing *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)). Here, the Brocks only challenge whether the trial court properly characterized the claims they labeled breach of fiduciary duty and fraud as negligence claims.[4] Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court. *See, e.g., Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (stating court had to decide precise nature of claims alleged before considering grounds asserted in summary judgment motion). Our review of a decision of a question of law is de novo. *See Barber v. Colo. Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995) (issues of law decided de novo).

## IV. Applicable Law

### A. The Difference Between Negligence, Breach–of–Fiduciary–Duty, and Fraud Claims Against Lawyers

■ Professional negligence, or the failure to exercise ordinary care, includes

---

**3.** The claims asserted against Renick are not an issue on appeal.

**4.** As we have noted, the trial court did not state the basis for the summary judgment on the Brocks' fraud claim. One basis is that the trial court could have characterized the fraud claim as a claim for negligence.

giving a client bad legal advice or otherwise improperly representing the client. *Newton v. Meade,* 143 S.W.3d 571, 574 (Tex.App.-Dallas 2004, no pet.); *Greathouse,* 982 S.W.2d at 172. For example, a lawyer can commit professional negligence by giving an erroneous legal opinion or erroneous advice, by delaying or failing to handle a matter entrusted to the lawyer's care, or by not using a lawyer's ordinary care in preparing, managing, and prosecuting a case. *See, e.g., Newton,* 143 S.W.3d at 574; *Kimleco Petroleum, Inc. v. Morrison & Shelton,* 91 S.W.3d 921, 923–24 (Tex. App.-Fort Worth 2002, pet. denied). The statute of limitations on professional negligence claims against lawyers is two years. *Parsons v. Turley,* 109 S.W.3d 804, 807 (Tex.App.-Dallas 2003, pet. denied).

■ On the other hand, breach of fiduciary duty by a lawyer "involves the 'integrity and fidelity' of an attorney and focuses on whether an attorney obtained an improper benefit from representing the client." *Gibson v. Ellis,* 126 S.W.3d 324, 330 (Tex.App.-Dallas 2004, no pet.) (citing *Kimleco Petroleum,* 91 S.W.3d at 923). "An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Id.* (citing *Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)). The statute of limitations on a claim for breach of fiduciary duty is four years. *Willis v. Donnelly,* 199 S.W.3d 262, 279 (Tex.2006).

Texas courts have allowed clients to assert fraud claims against lawyers when the specific allegations of fraud centered on the fees charged for the lawyers' services.

*See Sullivan v. Bickel & Brewer,* 943 S.W.2d 477, 481 (Tex.App.-Dallas 1995, writ denied) (citing *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992)). The statute of limitations on fraud claims is four years. *Id.;* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2005).

■ Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA. *See, e.g., Rangel v. Lapin,* 177 S.W.3d 17, 24 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (concluding claims for DTPA violations and breach of contract actually claim for legal malpractice because crux of claims was lawyers did not provide adequate legal representation); *Aiken v. Hancock,* 115 S.W.3d 26, 29 (Tex.App.-San Antonio 2003, pet. denied) (allegations that lawyer falsely represented he was prepared to try case, failed to reveal he was not prepared to try case, falsely represented expert witness was prepared to testify, and failed to reveal expert witness not fully prepared to testify did not allege "self-dealing, deception, or express misrepresentations in [the lawyer's] legal representation," to support separate cause of action for breach of fiduciary duty); *Kimleco Petroleum,* 91 S.W.3d at 924 (crux of claim that lawyer negligently failed to timely designate qualified expert witness and misled clients into believing case ready for trial stated claim for legal malpractice, not breach of fiduciary duty); *Ersek v. Davis & Davis, P.C.,* 69 S.W.3d 268, 270, 274 (Tex.App.-Austin 2002, pet. denied) (DTPA claim based on law firm's alleged "misrepresentations regarding its competency" was impermissibly fractured claim for legal malpractice); *Goffney,* 56 S.W.3d at 193–94 (client's allegations of breach of fiduciary duty against lawyers were "no more than a claim for

legal malpractice" because allegations did not "amount to self-dealing, deception, or misrepresentations"); *Greathouse*, 982 S.W.2d at 172–75 (misrepresentations alleged as claims for breach of fiduciary duty, fraud, breach of contract, and others, interpreted as claims for legal malpractice because complaint was that lawyer did not provide adequate legal representation); *Klein v. Reynolds, Cunningham, Peterson & Cordell*, 923 S.W.2d 45, 49 (Tex.App.-Houston [1st Dist.] 1995, no writ) (op. on mot. for reh'g) (principal allegation that lawyer filed defective appeal without obtaining extension alleged legal malpractice, not breach of contract, breach of fiduciary duty, or violations of DTPA).

This Court has differentiated between claims against a lawyer for professional negligence and breach of fiduciary duty. For example, in *Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288 (Tex. App.-Dallas 2005, no pet.), the focus of the clients' allegations was negligent drafting or review of documents and failure to timely inform the clients of defects in the documents. *Id.* at 290 n. 1. Additionally, the clients did not complain that the lawyers received an improper benefit from the representation. *Id.* As a result, we concluded the clients' claim for breach of fiduciary duty was actually a claim for professional negligence. *Id.; see also Gibson*, 126 S.W.3d at 330 (concluding that, even if lawyer gave incorrect explanations for deductions from settlement in personal injury lawsuit, no conclusive evidence lawyer knew of falsity at time or that explanations made for purpose of subordinating client's interest); *Sprowl v. Dooley*, No. 05–06–00359–CV, 2007 WL 1330447, at *1 (Tex. App.-Dallas May 8, 2007, no pet.) (mem. op.) (client's allegations that attorney failed to investigate and prosecute claim, failed to answer and respond to discovery, failed to file stay, and failed to file motion for contempt are allegations of professional negligence, even though client couched allegations in terms of negligence, fraud, and DTPA); *Beck v. Looper, Reed & McGraw, P.C.*, No. 05–05–00724–CV, 2006 WL 1452108, at *1 (Tex.App.-Dallas May 26, 2006, no pet.) (mem.op.) (complaint that lawyer failed to disclose he omitted performance criteria from employment agreement and that lawyer transferred shares of stock without criteria having been met alleged inadequate legal representation and did not allege claim for breach of fiduciary duty).

We differentiated between claims of professional negligence and breach of contract in *Newton v. Meade*. In that case, the client, Dallas Meade, received a traffic ticket. *Newton*, 143 S.W.3d at 572. Meade called Everett Newton's office and was told Newton could handle the matter and that Meade would be notified when a court date was set. *Id.* Meade sent Newton his citation and a check for the attorney's fee. *Id.* But Newton did not file an appearance in the traffic citation matter, and Meade received a letter from the city clerk informing him the city was processing a complaint for failure to appear and issuing a warrant for his arrest. *Id.* After several unsuccessful attempts to speak to Newton, Meade received a letter from Newton declining to represent Meade and returning the fee. *Id.* at 573. Meade sued Newton for violations of the DTPA, malpractice, and breach of contract. *Id.* A jury found in favor of Meade on the malpractice and breach-of-contract claims. On appeal, we determined that Meade's claim was really a professional negligence claim, not a claim for breach of contract, because Newton's conduct in failing to file an appearance raised the question whether he failed to exercise that degree of care, skill, or diligence that is a lawyer's professional duty. *Id.* at 575. As a result, we reversed the damages award on the breach-of-contract claim. *Id.*

When the facts of a case support claims against a lawyer for something other than professional negligence, clients have been allowed to pursue those other claims. In *Latham v. Castillo*, 972 S.W.2d 66, 69–70 (Tex.1998), the clients alleged not only that the lawyer failed to timely file their claim, but also that the lawyer "affirmatively misrepresented to them that he had filed and was actively prosecuting the claim." The court concluded that to characterize this claim as one for legal malpractice would ignore the distinction between negligent and deceptive conduct. *Id.* at 69.

Additionally, in *Sullivan v. Bickel & Brewer*, the client alleged his lawyers "negligently represented him," charged excessive fees, billed him for work that was never performed, "provided legal services in a manner intended to fraudulently lengthen the duration and increase the scope of litigation to increase their billings ... [and] deceived him regarding their representation and billing practices for that representation." *Sullivan*, 943 S.W.2d at 482–83. We concluded the client stated causes of action for negligent legal practice and fraud because the case involved both "the quality of [the lawyers]' professional services" and also, "as a separate issue, the integrity of their billing practices." [5]

## B. Conflict–of–Interest Claims Against Lawyers

Courts in this state have reached different results in deciding whether a conflict-of-interest allegation against a lawyer gives rise to a claim for professional negligence or some other cause of action. For example, in *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 187, 190 (Tex.App.-Houston [14th Dist.] 2002, no pet.), the Houston Fourteenth Court of Appeals concluded the following allegations of undisclosed conflicts of interest stated an independent claim for breach of fiduciary duty:

> failing to counsel and advise Deutsch about the conflicts which arose during the Law Firm's representation of Deutsch ...;
>
> failing to withdraw from representation of Deutsch once the conflicts arose; and
>
> failing to advise Deutsch to retain separate counsel, in light of the Law Firm's conflicts of interest in representing Deutsch.

*See also Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 873 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (remanding claim for breach of fiduciary duty because court concluded fact issue existed concerning whether lawyers had duty to tell clients about potential conflict of interest in time for clients to obtain other counsel prior to hearings).

Likewise, in *Archer v. Medical Protective Co.*, 197 S.W.3d 422, 427–28 (Tex.App.-Amarillo 2006, pet. denied), the Amarillo Court of Appeals concluded that, although the allegations in the petition were "some-

---

5. In reaching our conclusion, we relied on two other cases in which appellate courts held that a client properly stated a cause of action for fraud against a lawyer: *Estate of Degley v. Vega*, 797 S.W.2d 299, 303 (Tex. App.-Corpus Christi 1990, no writ), in which the court stated, "We see an important distinction between an action for negligent legal practice, which is clearly governed by the two-year limitations period applicable to personal injuries[ ], and for intentional fraud committed by an attorney"; and *Jampole v. Matthews*, 857 S.W.2d 57, 62 (Tex.App.-Houston [1st Dist.] 1993, writ denied), in which the court stated, "We distinguish, as the Corpus Christi Court of Appeals did, between an action for negligent legal practice and one for fraud allegedly committed by an attorney relating to the establishing and charging of fees for services." *Sullivan*, 943 S.W.2d at 483.

what spartan," one of the client's allegations could be characterized as a claim for breach of fiduciary duty, as opposed to a claim for professional negligence:

> failure to "represent [client/insured]'s interests notwithstanding the interests of [insurer] in a situation in which the representation of [client/insured] was adversely limited by [the lawyer's] own interest in keeping the business and favor of [insurer]."

The court held the allegation stated an independent claim for breach of fiduciary duty because it "concerns a matter of divided loyalties, *e.g.*, the pursuit of [the attorney's] own pecuniary interests over the interests of his client." *Id.*

In contrast, in *Kahlig v. Boyd*, 980 S.W.2d 685, 689 (Tex.App.-San Antonio 1998, pet. denied), the client asserted claims for fraud and DTPA violations, arguing his lawyer's affair with his current wife during a child custody dispute with his ex-wife created a conflict of interest the lawyer was required to disclose. The San Antonio Court of Appeals concluded some of the client's fraud and DTPA claims alleged legal malpractice because the client was really claiming that once the lawyer started the affair, the lawyer was not representing the client to the best of the lawyer's abilities. Because the client abandoned his legal malpractice claim before trial, the court concluded the client had also abandoned these "disguised malpractice claims." *Id.* at 689.

In summary, some Texas courts have recognized that breach-of-fiduciary-duty claims alleging the lawyer obtained an improper benefit from his representation or improperly failed to disclose his own conflict of interest are not professional negligence claims. But other courts have held the claim is a professional negligence claim if the claim is really that the lawyer's conflict of interest prevented him from adequately representing the client.[6] As is apparent from our review of cases, there is a lack of clarity in this area of the law. Some of that may be attributable to the fact that the relationship between the lawyer and the client is inherently a fiduciary relationship. In non-lawyer cases in which there is a fiduciary relationship, many of the claims against the fiduciary are labeled breach-of-fiduciary-duty claims. However, with lawyers, the standard of care in negligence claims is often defined by the characteristics of that inherent fiduciary relationship. As a result, courts refer to the fiduciary relationship that the lawyer has to the client and use fiduciary standards to define the standard of care required of lawyers. *See, e.g., Two Thirty Nine Joint Venture v. Joe*, 60 S.W.3d 896, 905 (Tex. App.-Dallas 2001), *rev'd on other grounds*, 145 S.W.3d 150 (Tex.2004). And courts have most often applied those standards to conclude that the claims are really negligence, not breach-of-fiduciary-duty claims.

## V. STANDARD IN THIS CASE

■■■ Based on this review of case law, we analyze the claims in this case recognizing that claims regarding the quality of the lawyer's representation of the client are

---

**6.** Courts in other jurisdictions have distinguished between negligence and breach of fiduciary duty by concluding that negligence claims involve standards of care, whereas breach-of-fiduciary-duty claims involve standards of conduct. *See, e.g., Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct.App.1996). Some courts include a duty to avoid conflicts of interest within the standard of conduct. *See, e.g., Tyson v. Moore*, 613 So.2d 817, 823 (Miss.1992). And other courts include the duty of loyalty as part of the duty of competent representation and consider these allegations as raising only professional negligence claims. *See, e.g., In re Cooperman*, 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069, 1071 (1994).

professional negligence claims, but that not all claims by clients against lawyers are professional negligence claims. And although the Brocks have labeled their claims breach of fiduciary duty and fraud, we are not bound by the labels the parties place on their claims. *See, e.g., State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980); *BCY Water Supply Corp. v. Residential Invs., Inc.,* 170 S.W.3d 596, 604–05 (Tex.App.-Tyler 2005, pet. denied). Additionally, characterizing conduct as a "misrepresentation" or "conflict of interest" does not alone transform what is really a professional negligence claim into either a fraud or a breach-of-fiduciary-duty claim. *See, e.g., Aiken,* 115 S.W.3d at 29; *Kimleco Petroleum,* 91 S.W.3d at 924; *Ersek,* 69 S.W.3d at 270, 274; *Goffney,* 56 S.W.3d at 193–94; *Greathouse,* 982 S.W.2d at 172–75; *Klein,* 923 S.W.2d at 49. Instead, to determine what statute of limitations applies to the claims, we must discern the real substance of the claims.

At oral argument, counsel for the Brocks argued their claims allege a conflict of interest and that this Court, in *Two Thirty Nine Joint Venture v. Joe,* held that a conflict of interest forms the basis of a claim for breach of fiduciary duty. We disagree with the Brocks' characterization of the *Joe* case. In *Joe,* we were not called upon to decide, and did not discuss, whether claims had been impermissibly fractured. Instead, we concluded "an attorney's duty of care includes disclosure of any conflict of interest that may affect the attorney's representation of that client's interest." *Joe,* 60 S.W.3d at 900.[7]

The Brocks' counsel also contended that in the *Newton* case, we endorsed the *Deutsch* court's analysis and concluded that conflict-of-interest allegations against lawyers constitute breach-of-fiduciary-duty claims. Again, we disagree. The *Newton* court referred to *Deutsch,* noting the *Deutsch* court's conclusion that some claims had not been impermissibly fractured in that case. *See Newton,* 143 S.W.3d at 574–75. But the *Newton* court concluded that the allegations in the case it was deciding did not invoke an independent contract claim because the client's claim that the lawyer failed to file an appearance "raised the question whether he failed to exercise that degree of care, skill, or diligence that is a lawyer's professional duty." *Id.* at 575. In other words, the claim was based on a tort standard of care. *Id.*

Also at oral argument, the Lawyers' counsel agreed that some of the Brocks' allegations assert a conflict of interest, but he argued those allegations do not claim self-dealing or the type of intentional misconduct at issue in *Deutsch* and *Sullivan.* He contended that breach-of-fiduciary-duty claims include claims that a lawyer gained some improper benefit because of the attorney-client relationship, or engaged in stealing or fraudulent billing practices. He argued all of the claims in this case are really negligence claims because they all essentially complain about

7. The majority in *Joe* refers to the case as one for malpractice and variously refers to breach of fiduciary duty and negligence. As the dissent noted:

239 JV's amended petition includes a single cause of action under the heading "Negligence/Gross Negligence and Breach of Fiduciary Duty and of Loyalty." The majority titles its analysis "Breach of Fiduciary Duty" but addresses the claims throughout as malpractice, employing the traditional elements of negligence. 239 JV conceded in its summary judgment response that "regardless of characterization [of its negligence and breach of fiduciary duty claims], the analysis would be the same under the particular facts of this case."

*Joe,* 60 S.W.3d at 920 n. 8 (FitzGerald, J., dissenting).

the nature of the legal advice that was given.

### A. The Brocks' Breach–of–Fiduciary–Duty Claims

 We look at the language in the first amended petition to determine whether the Brocks are really complaining about the quality of the services the Lawyers performed or something else. We note that the remedies the Brocks seek—fee forfeiture and a constructive trust—are remedies available for breach-of-fiduciary-duty claims. However, the remedy sought is only one factor we consider when determining the nature of the claims. *See Klein,* 923 S.W.2d at 49. In this case, it is not a dispositive factor. The Brocks alleged the following specific breaches of the Lawyers' fiduciary duties:

(1) the Lawyers "continu[ed] to represent Renick and the Brock[s] after Renick was sued by way of counterclaim without getting a written waiver of the conflict of interest" from the Brocks;

(2) the Lawyers "represent[ed] to the Brock[s] that their claims were not worth pursuing at trial should Renick settle out despite the fact that [the Lawyers] knew that the [Brocks] had viable and valuable claims independent of the claims or cooperation of Renick";

(3) the Lawyers "urg[ed] the [Brocks] to accept the $7.5 million aggregate settlement offer (which [the Brocks] did, relying upon the [Lawyers'] expertise and duties of loyalty to them, and the purported truthfulness of the [Lawyers'] representations)";

(4) the Lawyers "engag[ed] in self-dealing when they continued to represent both Renick and the Brock[s] after Renick was sued by way of a counterclaim and no longer wanted to pursue the matter to trial";

(5) the Lawyers "agree[d] to set aside the findings of the court in the Howell case, after advising [the Brocks] that the Howell case had decided most of the issues leaving 'very little to do to prove damages' and charging [the Brocks] exorbitant hourly fees for reestablishing and proving the issues set aside";

(6) the Lawyers "divid[ed] the aggregate settlement, half to Renick and half to [the Brocks], despite the fact that Renick had been sued by way of counterclaim and knowledge that Renick's cause of action was probably barred by limitations while [the Brocks'] claims were not"; ·

(7) the Lawyers "chos[e] their own interest in obtaining a multimillion dollar fee in the Howell case through taking action in that case which was detrimental to the [Brocks'] interest";

(8) the Lawyers "fail[ed] to represent [the Brocks'] interest with undivided loyalty";

(9) the Lawyers "fail[ed] to inform clients of all material facts as soon as conflicts arose";

(10) the Lawyers "fail[ed] to make full and fair disclosures of every facet of the proposed 'Howell' settlement and the settlement of the [Blockbuster] lawsuit";

(11) the Lawyers "ha[d] the [Brocks] sign a settlement document releasing another client in the same suit (Renick) without advising them of the effect of such release and then attempted to use such release in this suit to the detriment of [the Brocks] and to their own benefit."

We conclude these allegations complain about the quality of the Lawyers' representation, specifically, the Lawyers' failure to properly advise, inform, and communicate with the Brocks about the case, which are claims of professional negligence. *See Archer,* 197 S.W.3d at 427 (claims that

lawyer neglected matters, mis-evaluated case, and failed to communicate with client alleged professional negligence); *Deutsch*, 97 S.W.3d at 187, 189–90 (allegation that law firm failed to counsel and advise client about purpose and effect of indemnity language in engagement letter stated claim for professional negligence, not breach of fiduciary duty); *Longoria v. Whitehurst*, No. 12–03–00298–CV, 2005 WL 465527, at *1 (Tex.App.-Tyler 2005, pet. denied) (mem.op.) (lawyers' alleged failure to explain present value of client's settlement stated claim for professional negligence).

Although paragraph (4) states the Lawyers "engaged in self-dealing when they continued to represent both Renick and the Brock[s]," the Brocks do not allege the Lawyers deceived them, pursued their own pecuniary interests over the Brocks' interests, or obtained any improper benefit by continuing to represent both clients. *Cf. Archer*, 197 S.W.3d at 427–28 (allegation that lawyer pursued his own pecuniary interest over interests of client alleged self-dealing to support claim for breach of fiduciary duty). Additionally, paragraph (7), which states the Lawyers "chos[e] their own interest in obtaining a multimillion dollar fee in the Howell case," to the detriment of the Brocks, relates to paragraph (5) and does not, without more, allege the type of dishonesty or intentional deception that will support a breach-of-fiduciary-duty claim. *See O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex.App.-San Antonio 2007, pet. filed) (concluding allegation that attorney failed to "exercise the highest degree of care, good faith and honest dealing," without more, not sufficient to support a claim for breach of fiduciary duty).

In summary, we conclude these allegations assert claims for professional negligence because the essence of the allegations is that the Lawyers' representation fell below the quality required under the law. As a result, we conclude the trial court did not err by concluding these claims are claims for legal malpractice.

We overrule this sub-part of appellants' sole issue.

### B. The Brocks' Fraud Claims

■ In a single paragraph in their first amended petition under the subheading "FRAUD," the Brocks alleged:

> The actions of the Defendants constituted fraud. False and misleading information was given to the Plaintiffs by Defendants Renick, Gruber, Elliott, and Kane Russell. Information was withheld by those Defendants. The false information and withheld information was material, was given or withheld with the intent that the Plaintiffs rely on false or incomplete information, and Plaintiffs did so rely to their damage.

In oral argument, counsel for the Brocks contended these allegations stand on their own, are sufficient to generally allege misrepresentation and fraud, and demonstrate the fraud claim is not a fractured negligence claim. We disagree.

■ As we held in *Sullivan*, claims against lawyers can be separately pursued as fraud claims. However, in *Sullivan*, the claims we concluded could be separately pleaded as fraud claims centered around allegations that the lawyers "fraudulently lengthen[ed] the duration and increase[d] the scope of litigation to increase their billings" and billed for work that was never performed. *Sullivan*, 943 S.W.2d at 482–83. The Brocks do not make claims such as those made in *Sullivan*. In fact, the Brocks do not identify any allegations of conduct in the fraud claim we quoted from their pleadings that we can review to determine whether a separate claim for fraud is stated that may be subject to a different statute of limitations.

Additionally, the Brocks did not challenge the second ground upon which the trial court could have granted summary judgment—the Lawyers' argument that the fraud claim was barred because it was filed more than four years following the accrual of the cause of action. Where, as here, a trial court does not specify the grounds upon which summary judgment is based, an appellant must specifically challenge every possible ground for rendition of summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Jones v. Hyman,* 107 S.W.3d 830, 832 (Tex.App.-Dallas 2003, no pet.); *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 256 (Tex.App.-Dallas 1993), *writ denied per curiam,* 889 S.W.2d 266 (Tex.1994). If the appellant does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone. *Jones,* 107 S.W.3d at 832; *Cullen/Frost Bank,* 852 S.W.2d at 256.

We overrule this sub-part of appellants' sole issue.

## VI. CONCLUSION

We affirm the trial court's judgment.