**AFFIRMED; Opinion Filed April 21, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-18-01345-CV**

**NEXBANK, SSB, Appellant**
**V.**
**WINSTEAD PC, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-01816**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Nowell
Opinion by Justice Nowell

NexBank, SSB sued Winstead PC for professional negligence and negligent misrepresentation. Winstead filed a hybrid no-evidence and traditional motion for summary judgment, which the trial court granted; the trial court's order dismissed all of NexBank's claims with prejudice. The trial court also struck affidavits included in NexBank's response to Winstead's motion. Appealing both orders, NexBank argues the trial court erred by granting Winstead's motion for summary judgment and by striking the affidavits. We affirm the trial court's judgment.

FACTUAL BACKGROUND

A. Underlying Dispute

On January 19, 2007, NexBank (as lender) entered into a loan agreement with TCI Park West II, Inc. (the Borrower) to finance the purchase of property. The $62 million secured loan was guaranteed by Transcontinental Realty Investors, Inc. (the Guarantor). In December 2008, the Borrower indicated it would be unable to repay the loan, which was set to mature the following month. NexBank then hired Winstead to represent NexBank in connection with the loan and, if necessary, foreclosure of the property. For more than two years, Winstead acted as NexBank's counsel for matters relating to the loan.[1] Finally, on June 7, 2011, the property was sold for $29.5 million at a non-judicial foreclosure sale.

NexBank sued the Guarantor to recover the post-foreclosure deficiency amount of approximately $33 million (the Guarantor Litigation). The Guarantor pleaded invalid foreclosure as an affirmative defense. NexBank filed a motion for summary judgment asserting it was entitled to three summary judgment rulings: (1) the Guarantor was liable to NexBank pursuant to the terms of the guaranty agreement; (2) in the agreement, the Guarantor contractually waived all defenses and/or offsets to liability as well as all counterclaims that would provide a defense or offset to liability; and (3) because of the waiver, the Guarantor could not object

---

[1] NexBank's pleadings include extensive discussions detailing the allegedly negligent acts Winstead committed during the representation. Recitation of these alleged acts is not necessary for us to resolve this appeal and, therefore, we do not list or discuss them. *See* TEX. R. APP. P. 47.1.

to the foreclosure sale price and was liable to NexBank for the full amount of the deficiency. Subsequently, the Guarantor filed a motion for summary judgment on its affirmative defense of wrongful foreclosure. NexBank filed a cross-motion for summary judgment on the Guarantor's wrongful foreclosure affirmative defense. In a single order, the trial court denied all three motions without further explanation.[2] The case did not proceed to trial. Instead, NexBank and the Guarantor settled the lawsuit for approximately $7 million. Winstead did not represent NexBank in the Guarantor Litigation.

### B. Suit Against Winstead

NexBank sued Winstead for professional negligence and negligent misrepresentation arising from Winstead's work on the loan and non-judicial foreclosure. NexBank alleged Winstead made numerous mistakes during its representation (which NexBank enumerated and discussed in its petition), those mistakes caused the foreclosure to be invalid, and the invalid foreclosure precluded NexBank from fully recovering on its deficiency claim against the Guarantor. NexBank's first amended petition alleged the trial court's denial of its motion for summary judgment on the Guarantor's wrongful foreclosure affirmative defense "indicated that Borrower and Guarantor had raised triable issues of fact as to whether the foreclosure was wrongful, given the many hurdles imposed by the numerous

---

[2] Judge Ken Molberg presided over the trial court.

mistakes in the foreclosure process and documentation. If at trial [of the Guarantor Litigation] the Foreclosure that Winstead had orchestrated was found wrongful, then [NexBank] would not have recovered any of its $30 million-plus deficiency."

Winstead filed a hybrid no-evidence and traditional motion for summary judgment on NexBank's professional negligence and negligent misrepresentation claims. Winstead proffered several arguments, including that NexBank had no evidence of causation. Winstead also moved to exclude testimony from Paul Johnson, NexBank's expert. Johnson, a commercial real estate attorney licensed in Texas, provided an affidavit stating Winstead negligently committed a series of errors that a reasonably prudent attorney with a specialization in commercial real estate law practicing in Texas would not have committed. He further averred that, had Winstead not committed these errors, the trial court in the Guarantor Litigation would have granted NexBank's motion for summary judgment and, had the Guarantor presented its wrongful foreclosure claim at trial, "it is more likely than not that they would have prevailed, and [NexBank] would have lost the deficiency."

The trial court granted Winstead's motion for summary judgment in its entirety and dismissed all of NexBank's claims with prejudice. As to the motion to exclude Johnson, the trial court granted the motion in part and denied it in part. The trial court denied the motion to the extent it challenged Johnson's qualifications to testify regarding the standard of care of an attorney conducting a non-judicial foreclosure sale; denied the motion to the extent it sought to exclude Johnson's

opinions about the outcome of a trial of the Guarantor Litigation; and granted the motion to the extent Johnson sought to render an opinion regarding the cause(s) of the trial court's rulings on the motions for summary judgment in the Guarantor Litigation. This appeal followed.

LAW & ANALYSIS

**A. Standard of Review**

Winstead filed a combined traditional and no-evidence summary-judgment motion. *See* TEX. R. CIV. P. 166a(c), (i). We review no-evidence motions under the same legal sufficiency standard as a directed verdict. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id*; *see Sandberg v. STMicroelectronics, Inc.*, No. 05-18-01360-CV, 2020 WL 1809469, at *3 (Tex. App.—Dallas Apr. 9, 2020, no pet. h.) ("we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented."). In a traditional motion, the movant has the burden to show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant is entitled to summary judgment if it conclusively negates at least one element of the plaintiff's claim. *Painter*, 561 S.W.3d at 130. When reviewing either type of summary-judgment motion, we view the evidence "in the light most favorable to the nonmovant, crediting evidence a reasonable jury could

credit and disregarding contrary evidence and inferences unless a reasonable jury could not." *Id.*

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we generally first review the trial court's judgment under the no-evidence standard of review. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 438-39 (Tex. App.—Dallas 2014, no pet.). Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Id.* at 439.

## B. Elements of Professional Negligence Claim

To prove a professional negligence claim, the former client must show (1) the existence of a duty of care owed to the client, (2) the duty was breached, and (3) the breach proximately caused damage to the client. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). In its no-evidence motion for summary judgment, Winstead challenged the third element; Winstead argued NexBank had no evidence that its breach, if any, proximately caused damage to NexBank. Once Winstead asserted its no-evidence challenge, the burden shifted to NexBank to produce more than a scintilla of probative evidence to raise a fact issue on the challenged element. *See Sandberg*, 2020 WL 1809469, at *3.

Proximate cause has two components: cause in fact and foreseeability. *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). "Cause in fact must be established by proof that (1) the negligent act or omission was a substantial factor in bringing about

–6–

the harm at issue, and (2) absent the negligent act or omission ('but for' the act or omission), the harm would not have occurred." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Res. Corp*., 299 S.W.3d 106, 122 (Tex. 2009); *Rogers*, 518 S.W.3d at 403 ("[O]ur cause-in-fact standard requires not only that the act or omission be a substantial factor but also that it be a but-for cause of the injury or occurrence."). Foreseeability "addresses the proper scope of a defendant's legal responsibility for negligent conduct that in fact caused harm" and "asks whether the harm incurred should have been anticipated and whether policy considerations should limit the consequences of a defendant's conduct." *Rogers*, 519 S.W.3d at 402. "Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof." *Akin*, 299 S.W.3d at 122.

"In every case, the plaintiff must supply a causal link between the attorney's alleged negligence and the client's damages." *Rogers*, 518 S.W.3d at 404. "A lawyer can be negligent and yet cause no harm." *Id*. at 400. "And, if the breach of a duty of care does not cause harm, no valid claim for legal-malpractice exists." *Id*.

Generally, in a legal malpractice case, expert witness testimony is required to rebut a defendant's motion for summary judgment challenging the causation element. *Swaim*, 530 S.W.3d at 679. The expert affidavit must be probative and raise a fact issue. *Id.* Conclusory affidavits are not probative. *Id*. To avoid being conclusory, the affidavit must explain "how and why the negligence caused the injury." *Id.* (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010)). To that

end, an expert's opinion must set out a "demonstrable and reasoned basis on which to evaluate [the] opinion." *Id.* (quoting *Elizondo v. Krist*, 415 S.W.3d 259, 265 (Tex. 2013)).

**C. Winstead's No-Evidence Motion for Summary Judgment**

Winstead moved for no-evidence summary judgment on the ground that NexBank had no evidence of causation. In its sixth issue, NexBank argues the trial court erred by granting Winstead's no-evidence summary judgment motion because the trial court previously ruled causation in this case is a question of law and, thus, not subject to a no-evidence motion for summary judgment. Additionally, NexBank asserts the testimony of Paul Johnson constitutes more than a scintilla of probative evidence raising a fact issue on causation.

*1. Causation as a Matter of Law*

NexBank argues the trial court made an oral ruling that causation in this case was to be decided as a matter of law and, therefore, the trial court could not have granted a no-evidence motion for summary judgment on that basis. To support this argument, NexBank relies on the transcript from an August 20, 2018 hearing where the trial court considered numerous motions. The following dialogues about causation appear in the reporter's record from the hearing:

> THE COURT: I am going to deny [Winstead's] motion to strike the jury demand with the exception of the causation issue, which I've already said on the record I'm not going to proceed to trial without that issue having been presented to the Court first by way of [a] motion for summary judgment.

. . . .

THE COURT: What's your rebuttal that I don't need any causation experts?

MR. KRYDER:[3] Well, first of all, on the grounds on which we move [to exclude Paul Johnson's testimony], this is - - the first one is that Judge Molberg would have granted a summary judgment. That would be a matter of law.

And Johnson next opines that because of Winstead's conduct, had the borrower and guarantor presented their wrongful foreclosure claims at trial, at trial, it's more likely than not they would have prevailed. That's a matter of fact. What happens at trial is going to be a fact question.

So this gets back to the other point that they have to have - -

THE COURT: Well, let me ask you this. What is your contention that the Court shouldn't hear any evidence on causation of the granting or denying of the summary judgment motion? . . . And instead, I think their argument is just read briefing on it. Because, in effect, what I think would happen is you're going to, in effect, present the summary judgment motion to me that was presented to Judge Molberg, as a practical matter.

MR. KRYDER: Certainly that is something that this Court can decide as a matter of law.

Then if the Court gets to the second step about what would have happened at trial, then the Court's going to have to look at what the evidence would have been on - -

THE COURT: So what's your position on I don't need expert testimony on the issue of causation of whether or not Judge Molberg should have granted the motion, but perhaps I do need it in terms of had he not granted the motion and it proceeded to trial, what would have happened at trial?

. . . .

---

[3] George Kryder represented Winstead at the hearing.

MR. ZAPENDOWSKI:[4]  . . . . It's still a question, Your Honor, as to what Judge Molberg would have done.

THE COURT: But as a matter of fact, not as a matter of law.

MR. ZAPENDOWSKI:  No, it's a question of law, Your Honor. Once causation becomes a question of law under *Millhouse*[5] it's - - there's nothing in that opinion suggesting that you parse one part of causation and another part of causation.  It's all decided as a question of law by the Court.

. . . .

THE COURT:  Here's my ruling.  I am striking Paul Johnson's testimony only, only on the issue of causation as to the granting or denying of the summary judgment motion. . . . I don't need any causation testimony.  But when I say "causation," limited to the issue of whether or not Judge Molberg would have granted - - or should have granted the summary judgment motion.

. . . .

I don't need any testimony by anybody on the issue of the granting of the summary judgment motion. Plaintiff. Defense. I agree. That's purely a legal issue to be briefed.

If the Court, in effect, says, no Judge Molberg . . . properly denied the summary judgment, and then this trial has to decide whether or not the negligence, if any, of Winstead caused the parties to settle on the cheap, that could be an issue of expert testimony.

While the trial court initially made a broad proclamation that causation would be decided as a matter of law, the court clarified its ruling later in the hearing.  The trial court subsequently differentiated between causation based on whether Judge Molberg should have granted NexBank's motions for summary judgment in the

---

[4] Michael Zapendowski represented NexBank at the hearing.

[5] *See Millhouse v. Wiesenthal*, 775 S.W.2d 626 (Tex. 1989).

Guarantor Litigation and causation relating to whether Winstead's alleged negligence in its representation of NexBank "caused the parties [in the Guarantor Litigation] to settle on the cheap." We conclude the trial court did not decide all matters relating to causation were purely legal issues. Rather, that ruling was limited to whether Judge Molberg should have granted NexBank's motions for summary judgment in the Guarantor Litigation.

### 2. Evidence of Causation

NexBank relies on the expert testimony of Paul Johnson to establish causation.[6] Johnson averred Winstead negligently committed a series of errors that a reasonably prudent attorney with a specialization in commercial real estate law practicing in Texas would not have. He further averred: "It is also my opinion that had Borrower and Guarantor presented their wrongful foreclosure claims at trial [in the Guarantor Litigation], it is more likely than not that they would have prevailed, and Plaintiffs would have lost the deficiency." Winstead argues this statement is speculative and conclusory on its face and, thus, is no evidence of causation as a matter of law. We agree.[7]

"[T]he relevant question when addressing the adequacy of expert opinion affidavits in legal malpractice cases is 'Why': Why did the expert reach that

---

[6] NexBank does not challenge the trial court's order excluding Johnson's opinions about Judge Molberg's rulings on summary judgment motions in the Guarantor Litigation.

[7] For purposes of this analysis, we will assume Winstead owed a duty of care to NexBank and breached its duty by failing to properly handle the loan workout and foreclosure, resulting in an invalid foreclosure.

particular opinion?" *Rogers*, 518 S.W.3d at 405. To demonstrate "why," the affidavit must explain the link between the facts the expert relied upon and the opinion reached. *See id.*; *see also Swaim*, 530 S.W.3d at 679. Johnson's affidavit does not set forth any basis for his opinion that, had the Guarantor Litigation proceeded to trial and the Guarantor presented its wrongful foreclosure defense, it is more likely than not the Guarantor would have prevailed and NexBank would have lost the deficiency because of Winstead's errors. While his affidavit lists numerous actions Winstead should have taken to ensure a valid foreclosure, Johnson does not explain how an invalid foreclosure would have caused NexBank to lose the Guarantor Litigation had that case gone to trial. *See Swaim*, 530 S.W.3d at 679; *see also Rogers*, 518 S.W.3d at 405. Instead, without linking any facts to his conclusion, he summarily announces it is more likely than not that NexBank would not have prevailed. Because Johnson fails to provide a basis for his opinion, we conclude the opinion is conclusory and is not probative evidence. Johnson's "conjecture, guess, or speculation will not suffice" as proof of what would have occurred had the Guarantor Litigation proceeded to trial. *See Akin*, 299 S.W.3d at 122.

Because the only evidence NexBank offered to meet its burden to raise a fact issue showing Winstead's errors caused its damages is conclusory, we conclude NexBank presented no evidence of causation. Therefore, we conclude the trial court did not err by granting Winstead's no-evidence motion for summary judgment on

the ground that NexBank had no evidence of causation. We overrule NexBank's sixth issue.

### D. Anti-Fracturing Doctrine

In its seventh issue, NexBank asserts its negligent misrepresentation claim is not barred by the anti-fracturing rule. The anti-fracturing rule prevents a plaintiff from converting what are actually professional negligence claims against an attorney into other claims. *James v. Witherite*, No. 05-17-00799-CV, 2018 WL 5869641, at *7 (Tex. App.—Dallas Nov. 9, 2018, no pet.) (mem. op.) (citing *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied)). For the anti-fracturing rule to apply, the gravamen of the plaintiff's complaints must focus on the quality or adequacy of the attorney's representation. *Id*. (*Won Pak*, 313 S.W.3d 457). Professional negligence, or the failure to exercise ordinary care, includes giving a client bad legal advice or otherwise improperly representing the client. *Id.* (citing *Murphy v. Gruber*, 241 S.W.3d 689, 692-93 (Tex. App.—Dallas 2007, pet. denied)). "For example, an attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests." *Id.* (citing *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—

Texarkana 2011, pet. denied)); *accord Murphy*, 241 S.W.3d at 693. When determining the applicability of the anti-fracturing rule, "we are not bound by the labels the parties place on their claims." *Murphy*, 241 S.W.3d at 697. Further, whether certain allegations asserted against an attorney are actually claims for professional negligence is a question of law to be determined by the court and is reviewed de novo. *Id.* at 692.

In its negligent misrepresentation claim, NexBank alleges Winstead "negligently supplied false information for the purpose of guiding [NexBank] in [its] decisions about whether and how to foreclose on the Property." NexBank also alleges Winstead did not exercise reasonable care or competence in obtaining or communicating the information provided in its legal advice, NexBank justifiably relied on the misrepresentations in deciding how to implement foreclosure and pursue deficiency claims against Borrower and Guarantor, and Winstead's negligent misrepresentations directly and proximately caused NexBank to suffer tens of millions of dollars in damages.

NexBank's negligent misrepresentation claim encompasses Winstead's alleged failure to obtain and communicate information as part of the legal advice Winstead provided. NexBank's complaints fall within the purview of a professional negligence claim and, thus, are barred by the anti-fracturing rule. *See James*, 2018 WL 5869641, at \*8; *J.A. Green Dev. Corp. v. Grant Thornton, LLP*, No. 05-15-0029-CV, 2016 WL 3547964, at \*8 (Tex. App.—Dallas June 28, 2016, pet. denied)

(mem. op.) (where essence of plaintiff's complaint was that attorney's advice was wrong and incomplete, plaintiff's allegations focused on adequacy of representation and constituted professional negligence claim); *see also Murphy*, 241 S.W.3d at 698–99 (where essence of pleaded allegations was attorney's failure to properly advise, inform, and communicate with client about case, allegations asserted claims of professional negligence); *Archer v. Med. Protective Co.*, 197 S.W.3d 422, 427 (Tex. App.—Amarillo 2006, pet. denied) (claims that lawyer neglected matters, mis-evaluated case, and failed to communicate with client alleged professional negligence). Accordingly, we conclude the trial court did not err by granting Winstead's motion for summary judgment as to the negligent misrepresentation claim. We overrule NexBank's seventh issue.

## CONCLUSION

NexBank raises several additional issues in its brief. However, because we conclude the trial court did not err by granting Winstead's motion for summary judgment, we need not resolve those issues to dispose of this appeal, and we decline to do so. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.


/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

181345F.P05

–15–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

NEXBANK, SSB, Appellant

No. 05-18-01345-CV        V.

WINSTEAD PC, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-15-01816.
Opinion delivered by Justice Nowell.
Justices Bridges and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee WINSTEAD PC recover its costs of this appeal from appellant NEXBANK, SSB.

Judgment entered this 21st day of April, 2020.