**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 27, 2012

Lyle W. Cayce
Clerk

No. 12-50346
Summary Calendar

HERIBERTO HUERTA,

Plaintiff - Appellant

v.

MARCIA G. SHEIN; LAW OFFICE OF MARCIA G. SHEIN, P.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
No. 5:11-CV-00476-OLG

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Heriberto Huerta filed suit against the Law Office of Marcia G. Shein, P.C., and attorney Marcia G. Shein, asserting claims for breach of contract, money had and received, breach of fiduciary duty, fraud, and negligence in connection with the defendants' alleged failure to file a timely 28 U.S.C. § 2255 motion on Huerta's behalf. Finding the claims barred as a matter of law, the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 12-50346

district court granted the defendants' motion to dismiss.  For the reasons set forth below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 1994, a jury convicted Heriberto Huerta of various drug-related offenses.  After unsuccessfully appealing his conviction, Huerta retained the Law Office of Marcia G. Shein, P.C., and attorney Marcia G. Shein (collectively "Shein" or "Defendants") to file on his behalf a habeas corpus motion—pursuant to 28 U.S.C. § 2255—challenging his conviction.  Under the provisions of section 2255, Huerta's motion was due April 24, 1997.  Because Shein did not mail the motion until April 23, 1997, however, it was not received and filed in the clerk's office until April 25, 1997.  Given the untimely filing, the district court dismissed Huerta's motion on March 13, 1998.

Huerta alleges that, after the dismissal, Shein convinced him to appeal because the law was favorable to his position.  Thus, acting on Huerta's behalf, Shein filed a motion in this court requesting a Certificate of Appealability.  The motion was denied June 17, 1999, as was a subsequently filed petition for rehearing.  Huerta claims that Shein then persuaded him to file motions for relief under Rule 60(b) and 28 U.S.C. § 2241.[1]  These motions also were denied.

According to Huerta's complaint, Shein never informed him that his section 2255 motion had been dismissed as untimely.  Indeed, Huerta claims that he did not discover this fact until 2009, when another attorney informed him that he had a right to file a malpractice claim against Shein.  On June 15, 2011, Huerta filed a federal diversity suit against Shein, alleging causes of action "involving breach of contract, negligence, breach of fiduciary duty, actual fraud, and fraudulent concealment of facts, which relate to Mr. Huerta's

---

[1] Rule 60(b) provides several grounds for relief from a final judgment, order, or proceeding, Fed. R. Civ. P. 60(b), while 28 U.S.C. § 2241 permits courts, in certain circumstances, to grant writs of habeas corpus.

underlying claim that Defendant's [sic] engaged in legal malpractice when they represented him."

On July 8, 2011, Shein filed a Rule 12(b)(6) motion to dismiss Huerta's complaint. After considering the parties' arguments, the magistrate judge presiding over the case initially recommended to the district court that the motion be denied. Pursuant to 28 U.S.C. § 636(b)(1), Shein filed written objections to the recommendation, arguing that the magistrate judge overlooked compelling authority that supported their motion to dismiss. In particular, Shein argued that *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex. 1995), and its progeny foreclosed Huerta's claims because, under those cases, it is a plaintiff's criminal conduct rather than counsel's alleged negligence that is the sole proximate cause of any injuries flowing from the plaintiff's conviction. Thus, as a matter of law, "plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated." *Id.* at 497–98.

Upon consideration of Shein's objections, the magistrate judge found *Peeler* and its progeny controlling. Accordingly, because Huerta had not been exonerated, she amended her report to the district court and recommended that Shein's motion to dismiss be granted. On March 21, 2012, over Huerta's objection, the district court adopted the magistrate judge's report and recommendation, and entered a judgment dismissing Huerta's claims.

Huerta timely appeals, asserting that the district court committed three errors in dismissing his claims. First, he argues that *Peeler*'s "sole proximate cause bar" is inapplicable here because (1) the facts in *Peeler* are distinguishable from the facts of this case, and (2) the policy justifications for imposition of the bar are not implicated in this case. Second, Huerta alternatively contends that the sole proximate cause bar applies only to his negligence claim, and that the

No. 12-50346

district court therefore erred in applying it to his claims for breach of contract, money had and received, breach of fiduciary duty, actual fraud, and fraudulent concealment of facts.  Finally, Huerta maintains that the district court's dismissal of his claims violated the Contract Clause of the United States Constitution, because that clause guarantees him the right to enforce his contract with Shein.

## II. STANDARD OF REVIEW

"We review de novo a district court's dismissal of a complaint under Rule 12(b)(6)." *Frame v. City of Arlington*, 657 F.3d 215, 222 (5th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "All well-pleaded facts in the complaint are accepted as true and viewed in the light most favorable to the nonmovant." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).  "Rule 12(b)(6)," however, "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  A claim must be dismissed "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## III. DISCUSSION

Where, as here, federal jurisdiction is based on diversity of citizenship, we apply the substantive law of the forum state. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011).  Thus, Texas substantive law governs this dispute. To determine a state's substantive law, "federal courts sitting in diversity look to the final decisions of the state's highest court." *Am. Int'l Specialty Lines Ins.*

No. 12-50346

*Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *Id.* In making this determination, "we defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998)).

A.     **The Sole Proximate Cause Bar**

As alluded to above, the district court granted Shein's motion to dismiss after holding that *Peeler* and its progeny foreclosed Huerta's claims. In *Peeler*, the plaintiff had pled guilty to a federal crime pursuant to a plea agreement. 909 S.W.2d at 496. After subsequently learning that her defense attorney allegedly had neglected to inform her of a prior offer of transactional immunity, she sued the attorney for malpractice. *Id.* In addressing her claim, the Texas Supreme Court first noted that, "[g]enerally, to recover on a claim of legal malpractice, a plaintiff must prove that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Id.* The court explained, however, that additional public policy concerns are implicated when a criminal defendant sues her defense attorney for malpractice. *Id.* at 496–97. In particular, the court found that permitting the plaintiff to pursue her malpractice claim would thwart the public policies of "prohibit[ing] convicts from profiting from their illegal conduct" and "impermissibly shift[ing] responsibility for the crime away from the convict." *Id.* at 498.

In light of these policy concerns, the court held "that, as a matter of law, it is the illegal conduct rather than the negligence of a convict's counsel that is

5

the cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned." *Id.* Accordingly, "plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id.* at 497–98. Because the plaintiff in *Peeler* had not been exonerated of her crime, the court held that she had no cognizable malpractice claim, since, as a matter of law, "her illegal acts remain[ed] the sole proximate and producing causes of her indictment and conviction." *Id.* at 498.

### 1. Huerta's Professional Negligence Claim

While acknowledging *Peeler*'s general force, Huerta argues that its sole proximate cause bar is inapplicable to this case because the facts here are distinguishable from those of *Peeler* and, relatedly, the policy justifications for imposition of the bar would not be advanced by its application here. In particular, Huerta contends that, unlike counsel in *Peeler*, Shein's representation was not "in connection with" Huerta's conviction, because Shein was not his trial counsel, nor did they represent him on direct appeal. Thus, Huerta argues that because Shein's alleged malpractice occurred "in connection with" his habeas application rather than the underlying trial or direct appeal, the policy concerns at issue in *Peeler* would not be defeated by permitting Huerta to pursue his professional negligence claim. As such, Huerta maintains that the Texas Supreme Court would not apply *Peeler*'s sole proximate cause bar to this case, were it to decide the issue.

We are not persuaded that *Peeler* itself does not control the outcome of this case. Nonetheless, even if we grant as much, Huerta acknowledges that several intermediate appellate courts in Texas have applied *Peeler* to facts materially indistinguishable from those presented here. In *Falby v. Percely*, for example, inmate Allen Falby hired an attorney and the attorney's unlicensed associate to

file a state habeas application on Falby's behalf.  No. 09-04-422-CV, 2005 WL 1038776, at *1 (Tex. App.—Beaumont May 5, 2005, no pet.) (mem. op.).  For unexplained reasons, neither man actually filed Falby's application.  *Id.*  Falby subsequently brought suit, alleging that because of the attorney's negligence "in failing to file a state writ, a deadline for filing a federal writ passed."  *Id.*  Applying *Peeler*, the lower court granted the attorney's motion for summary judgment.  *Id.* at *2.  On appeal, Falby argued that *Peeler* was inapplicable because, as a habeas applicant, his suit against his attorney was "unrelated to his conviction."  *Id.*  The appellate court rejected this argument, however, finding that "the gravamen of [Falby's] complaint [was] that he [had] lost the ability to challenge his conviction through a federal post-conviction writ of habeas corpus because of [his attorney's] negligence."  *Id.*  The court thus held that *Peeler*'s sole proximate cause bar precluded Falby's recovery because his habeas application related to, and flowed from, his conviction.  *Id.* at *2–3.

Similarly, in *Meullion v. Gladden*, an inmate who had hired an attorney to prepare his habeas corpus application later sued the attorney for fraud, breach of contract, breach of fiduciary duty, and a Deceptive Trade Practices Act ("DTPA") violation.  No. 14-10-01143-CV, 2011 WL 5926676, at *1 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.).  The lower court dismissed the inmate's suit after applying *Peeler*'s sole proximate cause bar.  On appeal, the inmate argued that the lower court erred in applying *Peeler*'s bar because his attorney "was not connected to the conviction as trial counsel, nor was he the attorney on direct appeal."  *Id.* at *3 (internal quotation marks omitted).

In analyzing the inmate's claim, the *Meullion* court noted that several other courts had "declined to distinguish between the application of *Peeler* to suits against a convict's trial counsel, counsel on direct appeal, or counsel retained in connection with seeking habeas or other post-conviction relief."  *Id.*

No. 12-50346

at \*4.  Aside from *Falby*, the court also cited to *Nabors v. McColl*, in which another Texas appellate court applied *Peeler*'s bar after finding that the inmate's illegal conduct, rather than the attorney's alleged negligence in handling a post-conviction matter, was the sole proximate cause of the inmate's injuries.  *Id.* (citing *Nabors*, No. 05-08-01491-CV, 2010 WL 255968, at \*2–3 (Tex. App.—Dallas Jan. 25, 2010, pet. denied) (mem. op.)); *see also Butler v. Mason*, No. 11-05-00273-CV, 2006 WL 3747181, at \*1–2 (Tex. App.—Eastland Dec. 21, 2006, pet. denied) (per curiam) (mem. op.) (holding that *Peeler* precluded an inmate's suit against his attorney for the attorney's alleged mishandling of the inmate's habeas applications).  The *Meullion* court agreed, adopted the reasoning of these other cases, and concluded that the inmate's "claims concern[ed] the quality of legal counsel retained 'in connection with' [the inmate's] conviction."  2011 WL 5926676*,* at \*4.  Because the inmate's criminal conduct was "the only cause in fact of any injuries 'flowing from the conviction,'" the court held that his claims were precluded under *Peeler*.  *Id.* (citing *Peeler*, 909 S.W.2d at 498).

Although Huerta admits that these cases are squarely on point, he essentially argues that were the Texas Supreme Court to consider this precise issue, it—unlike the state's intermediate appellate courts—would not extend *Peeler* to negligence claims brought against post-conviction counsel.  Aside from general public policy statements, however, Huerta points to no authority from a Texas court that supports his assertion.  We therefore defer to the state's intermediate appellate court decisions and hold that *Peeler*'s sole proximate cause bar precludes Huerta's negligence claim against Shein.[2]

---

[2] Given that we do not agree with his argument that *Peeler* does not extend to negligence claims brought against post-conviction counsel, Huerta requests that we certify the questions raised in this case to the Texas Supreme Court.  While we may appropriately seek the guidance of a state's supreme court when the state's law is "genuinely unsettled," we unduly impose upon those courts when we certify questions as to which the law is not

## 2.    Huerta's Other Claims

Alternatively, Huerta contends that even if *Peeler*'s sole proximate cause bar precludes, as a matter of law, his negligence claim, the district court erred in applying it to his other claims.  Huerta correctly asserts that, by its terms, *Peeler* concerned only claims brought against an attorney for malpractice and violations of the DTPA.[3]  *See* 909 S.W.2d at 498.  Common to both causes of action, the *Peeler* court explained, was "the element of cause in fact," meaning that, to prevail, the plaintiff was required to show "that the defendant's conduct was a substantial factor in bringing about the injury which would not otherwise have occurred."  *Id.*  The plaintiff could not show this, however, since the court concluded that "as a matter of law, it is the illegal conduct rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction."  *Id.*

In light of the court's analysis, Huerta maintains that *Peeler* operates only to bar claims that require a showing of proximate cause.  As such, he submits that his claims for breach of contract, money had and received, fraud, and breach of fiduciary duty—none of which, he argues, requires a showing of proximate cause—should have survived Shein's motion to dismiss, because they are independent of his negligence claim.

Under Texas law, however, "[w]hether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court."  *Nabors*, 2010 WL 255968, at *2.  "Texas courts

---

unsettled.  *DiPascal v. N.Y. Life Ins. Co.*, 749 F.2d 255, 260 (5th Cir. 1985).  Here, the Texas courts have "given us ample guidance in the decisions cited in this opinion."  *Id.*

[3] Although the suit in *Peeler* originally also had included claims for breach of contract and breach of warranty, those issues had not been preserved for appeal.  909 S.W.2d at 499. The *Peeler* court thus "express[ed] no opinion about them."  *Id.*

do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA." *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). "[T]his prohibition does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty or fraud claim when there is a viable basis for doing so." *Meullion*, 2011 WL 5926676, at *4. Nevertheless, to do so, "the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. The plaintiff must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied).

Accordingly, we must turn to Huerta's complaint to determine the precise character of his claims, viewing the pleaded facts, as we must, in the light most favorable to him. At the outset, we note that Huerta's complaint describes the nature of the action as one "involving breach of contract, negligence, breach of fiduciary duty, actual fraud, and fraudulent concealment of facts, *which relate to Mr. Huerta's underlying claim that Defendant's [sic] engaged in legal malpractice when they represented him*." Huerta's claims therefore are set forth as follows: his breach of contract claim is based on the allegation that Shein failed to perform their contractual obligations "by failing to timely file Plaintiff's §2255 Habeas Corpus Motion"; Huerta's money had and received claim is grounded on the assertion that Shein "received monies from Plaintiff" to prepare and file the motion and that the "monies in equity and good conscience . . . belong[] to Plaintiff"; the breach of fiduciary duty claim is based on the

contention that Shein "failed to inform Plaintiff of their mistake associated with the untimely filing of his" motion and erroneously informed him that the courts' rulings were incorrect; and Huerta's fraud claims are grounded on the allegation that Shein failed to disclose and misrepresented certain facts "regarding their failure to timely file Plaintiff's" motion.

Thus, the crux of Huerta's complaint is that Shein: (1) failed timely to file Huerta's section 2255 motion, which led to its dismissal; (2) did not disclose the untimely nature of the filing to Huerta; and (3) erroneously advised Huerta to pursue an appeal because the law supported his position. Though framed as multiple causes of action, we conclude that these claims all sound in negligence, essentially amounting to the assertion that Shein committed legal malpractice.

Our conclusion finds ample support in Texas caselaw. In *Murphy*, for example, the court explained that, as alleged here, a lawyer commits "professional negligence by giving an erroneous legal opinion or erroneous advice, by delaying or failing to handle a matter entrusted to the lawyer's care, or by not using a lawyer's ordinary care in preparing, managing, and prosecuting a case." 241 S.W.3d at 693; *see also id.* at 692–93 ("Professional negligence, or the failure to exercise ordinary care, includes giving a client bad legal advice or otherwise improperly representing the client."). Because acts of this nature constitute professional negligence, Texas courts repeatedly have declined to permit plaintiffs to convert claims for these acts into breach of contract actions. *See Nabors*, 2010 WL 255968, at *2 (collecting cases). Likewise, "Texas courts have consistently held that the failure to disclose significant information about a client's case is professional negligence and not a breach of fiduciary duty." *Kemp v. Jensen*, 329 S.W.3d 866, 872 (Tex. App.—Eastland 2010, pet. denied) (reviewing cases); *see also Murphy*, 241 S.W.3d at 694 (explaining that Texas appellate courts have "differentiated between claims against a lawyer for

professional negligence and breach of fiduciary duty" and discussing cases so holding).

Indeed, this case is analogous to *Nabors*. There, an attorney ("McColl") had represented a defendant ("Nabors") charged with various drug-related offenses in both federal and state court. *Nabors*, 2010 WL 255968, at *1. After Nabors entered into a plea agreement, McColl allegedly informed him that additional charges that had been pending in Dallas County, Texas were dismissed. *Id.* Later, while serving his federal sentence, Nabors attempted to enroll in a residential drug and alcohol treatment program in exchange for a reduced sentence, but was informed that he was ineligible because his Dallas County case was still pending. *Id.* Nabors contacted McColl, who informed Nabors that the problem was simply a "bureaucratic error." *Id.* Although McColl subsequently determined that Nabors' Dallas County case remained open, he did not inform Nabors of this fact until several months later. *Id.*

Nabors eventually sued McColl for legal malpractice, DTPA violations, fraud, breach of contract, breach of fiduciary duties, and conversion. *Id.* At the outset, the court affirmed summary judgment against Nabors' malpractice claim after holding that, as a matter of law, *Peeler*'s sole proximate cause bar precluded recovery for malpractice. *Id.* at *1–2. The court then considered whether Nabors' additional claims were "subsumed in his legal malpractice claim." *Id.* at *2.

In analyzing that issue, the court began by examining Nabors' complaint, explaining:

> Nabors' claim for breach of contract is based on McColl's failure to "fully perform his agreement to represent [Nabors] in the Dallas case and timely complete" it and on Nabors' claim that McColl failed to earn the $25,000 fee in the Dallas case. Nabors' breach of fiduciary relationship claim is based on McColl's failure to disclose that the Dallas case was not dismissed, McColl's misrepresentations that the case was dismissed, and McColl's refusal to turn over

> certain client files and accounting records. Nabors' common law
> fraud claim is also based on McColl's alleged intentional
> nondisclosure of the fact the Dallas case had not been dismissed.

*Id.* at *3. The court noted that "[a] cause of action claiming bad legal advice or
improper representation is one for legal malpractice," and similarly, "[a]n
attorney's misrepresentations about the status of litigation being handled by the
attorney constitutes a claim for malpractice rather than breach of fiduciary
duty." *Id.* Thus, the court held, "Nabors' claims were an impermissible attempt
to convert what were really negligence claims into claims of breach of contract,
fraud, and breach of fiduciary duty." *Id.* The court therefore affirmed summary
judgment against Nabors, as it was "well settled" that his claims were barred by
law. *Id.* at *1.

Likewise here, Huerta's claims all amount to the assertion that Shein
committed professional negligence. We are therefore constrained by *Peeler*'s sole
proximate cause bar to affirm the district court's dismissal of those claims.

## B.    Huerta's Contract Clause Argument

Finally, Huerta argues that if we apply *Peeler*'s sole proximate cause bar
to his claims, our ruling will operate to deprive him of his rights under the
Contract Clause of the United States Constitution.[4] U.S. Const. art. I, § 10. The
Contract Clause provides that "[n]o State shall . . . pass any . . . Law impairing
the Obligation of Contracts." *Id.* Huerta maintains that the common law sole
proximate cause bar amounts to a violation of his rights under this clause
because the bar prevents him from holding Shein accountable for the contractual
obligations into which they entered.

We disagree. First, as we have explained, Huerta's claim is grounded not
in breach of contract, but rather in negligence. Moreover, even were that not the

---

[4] Huerta first raises this argument on appeal. Though this court generally does "not
consider arguments raised for the first time on appeal," *In re Paige*, 610 F.3d 865, 871 (5th Cir.
2010), for the reasons noted, Huerta's argument is, in any event, unavailing.

case, the United States Supreme Court has foreclosed Huerta's argument by holding that the Contract Clause "is directed only against impairment by legislation and not by judgments of courts." *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924); *see also Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 503 n.34 (stating that "only legislative actions, not judicial actions, can create a viable Contract Clause claim").  Because the sole proximate cause bar is a common law doctrine, the Contract Clause has no application here.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.