**Opinion issued May 16, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00325-CV

_____

**DONALD YOUNG AND DORIS YOUNG, Appellants**

**V.**

**DWAYNE R. DAY, P.C. AND DWAYNE R. DAY, Appellees**

---

**On Appeal from County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Case No. CV0072910**

---

## MEMORANDUM OPINION

Appellants, Donald and Doris Young, appeal the trial court's order granting summary judgment in favor of appellees, Dwayne R. Day, P.C., and Dwayne R. Day (collectively "Day"), on the Youngs' claims of professional negligence, breach of contract, negligent misrepresentation, fraud, breach of fiduciary duty, violations of

the Deceptive Trade Practices Act ("DTPA"), and declaratory relief. In two issues, the Youngs contend that the trial court (1) erred in granting summary judgment in favor of Day and (2) abused its discretion in failing to rule on their discovery motions prior to granting summary judgment. We affirm in part and reverse and remand in part.

## Background

In 2009, Day represented the Youngs in a personal injury lawsuit against Don Clapsaddle ("Clapsaddle lawsuit") stemming from injuries Donald sustained after he was struck by Clapsaddle's car while walking in a post office parking lot in August 2007. Lawrence Tylka, the Youngs' previous attorney, intervened in the Clapsaddle lawsuit seeking to recover unpaid fees and expenses,[1] and Chris Di Ferrante, a judgment creditor, filed a motion for turnover order in the suit, seeking to collect on two previously obtained judgments against the Youngs.

The case proceeded to trial on September 7, 2010. The jury found Donald solely responsible for the accident, and the trial court rendered a take-nothing judgment against the Youngs on February 1, 2011. The Fourteenth Court of Appeals affirmed. *See Young v. Clapsaddle*, No. 14-11-00396-CV, 2012 WL 2160249 (Tex. App.—Houston [14th Dist.] June 14, 2012, no pet.) (mem. op.).

---

[1] The Youngs fired Tylka and later retained Day to represent them.

On October 8, 2014, the Youngs filed suit against Day, asserting claims for legal malpractice and breach of contract arising from the Clapsaddle lawsuit. On March 6, 2015, Day filed an answer and special exceptions. On April 17, 2015, Day filed an amended answer and special exceptions to which he attached as an exhibit a document entitled "Power of Attorney and Contingent Fee Contract" purportedly entered into by the Youngs and Day.

On May 21, 2015, the Youngs filed their first amended petition alleging that Day had (1) failed to call certain witnesses at trial; (2) allowed Clapsaddle to present his witnesses by deposition rather than in person; and (3) insisted that the Youngs settle the lawsuit for any amount. They also alleged that he entered into an oral agreement to represent Donald in a lawsuit against Clear Lake Rehabilitation Hospital ("CLRH") for an injury Donald allegedly sustained while being treated for his accident-related injuries. They assert that Day did not follow through on the alleged oral contract and caused them to miss the deadline to sue the hospital. They further alleged that Day falsely advised them that they had to go to trial because there was no settlement offer. In April 2015, Day produced two pdf files which appear to be a contingency fee contract executed by the parties and a refusal in writing of a $200,000 settlement offer from Clapsaddle, both of which had apparently been signed by the Youngs. The Youngs allege that they never signed a contract with Day, and that Day never told them that he had received a $200,000

3

settlement offer from Clapsaddle. Claiming that these are "fraudulently generated documents," the Youngs added claims for negligent misrepresentation, fraud, breach of fiduciary duty, and declaratory judgment.

On October 28, 2015, Day filed a traditional motion for summary judgment. In the motion, Day alleged that (1) the Young's non-negligence claims were barred by the rule against fracturing a professional negligence claim; (2) their negligence claims were barred by the applicable statute of limitations; (3) their claims for professional negligence, breach of fiduciary duty, and negligent misrepresentation claims failed because the Youngs did not designate an expert to testify with regard to the appropriate standard of care, breach, and causation; (4) the Youngs' claim against Day with regard to CLRH failed because Day never agreed to represent the Youngs against CLRH; and (5) their declaratory judgment action failed because they signed a contingency fee agreement.

On November 13, 2015, the Youngs filed their summary judgment response, a supplemental amended original petition adding a claim for DTPA violations, and various other motions. Day filed a reply to the Youngs' summary judgment response.

On February 1, 2016, the trial court signed an order granting Day's motion for summary judgment. On March 2, 2016, the Youngs filed a motion for new trial which the trial court denied on March 21, 2016. This appeal followed.

## Summary Judgment

In their first issue, the Youngs contend that the trial court erred in granting summary judgment on their claims.

### A. Standard of Review

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for traditional summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's case. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). In our review, we take the non-movant's competent evidence as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in favor of the non-movant. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005).

5

When, as here, a trial court's order granting summary judgment does not specify the ground relied upon, the court must affirm the summary judgment if any of the summary judgment grounds is meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Because the trial court in this case did not specify the ground upon which it relied for its ruling, we will affirm if any theory advanced by Day in his summary judgment motion is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## B. Analysis

In support of their argument that the trial court erred in granting summary judgment, the Youngs contend that (1) their claims for breach of fiduciary duty, fraud, and DTPA violations are not barred by the anti-fracturing rule; (2) the discovery rule and the doctrine of fraudulent concealment applied to toll the statute of limitations on their claims; (3) Day did not seek dismissal of their DTPA claim and therefore summary judgment on this claim was improper; and (4) their claim related to Day's alleged failure to file suit against CLRH was improperly dismissed.

### 1. Anti-Fracturing Rule

The rule against fracturing claims prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or DTPA violations. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). The rule

6

prevents legal malpractice plaintiffs from "opportunistically transforming a claim that sounds only in negligence into other claims" to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427 (Tex. App.—Austin 2009, no pet.).

For the anti-fracturing rule to apply, however, the gravamen of a client's complaints must focus on the quality or adequacy of the attorney's representation. *Murphy v. Gruber*, 241 S.W.3d 689, 692–93 (Tex. App.—Dallas 2007, pet. denied). "If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim." *Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.). If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence. *Id.* In particular, claims of breach of fiduciary duty against an attorney focus on whether the attorney obtained an improper benefit from representing the client. *Won Pak*, 313 S.W.3d at 457. Merely characterizing conduct as a "misrepresentation" or "conflict of interest" does not necessarily transform what is

really a professional negligence claim into a fraud or breach of fiduciary duty claim. *Id.*

When determining whether an allegation states a claim for negligence or some other cause of action, the court is not bound by the parties' own characterization of the pleadings. *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP.*, 404 S.W.3d 75, 82 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court. *Murphy*, 241 S.W.3d at 692.

On appeal, the Youngs contend that that they have asserted proper breach of fiduciary duty, fraud, and DTPA claims that are distinct from their negligence claim. They argue that while it is true that they originally only pleaded claims for negligence and breach of contract, Day's production of the fraudulently generated fee contract and settlement memo "changed the 'gist' of the claims dramatically." They argue that upon production of those documents that they never signed, "[t]hey amended their pleadings to include fraud, breach of fiduciary duty, and DTPA violations, all based on the fraudulent, and extremely negligent act of failing to convey a critical settlement offer to plaintiffs on the eve of trial."

8

## 2. Breach of Fiduciary Duty

In their summary judgment response, the Youngs alleged that Day breached his fiduciary duty "by promising to sue [CLRH] with no intention of doing so and refusing to settle the Clapsaddle suit . . . because Day wanted Di Ferrante paid" and the Youngs would not agree to pay Di Ferrante out of their settlement funds. They further stated that "when Day is deposed, [the Youngs] intend to attempt to determine i[f] Day obtained a benefit from Di Ferrante as Day violated attorney-client privilege to disclose confidential communications between [the Youngs] and Day and confidential settlement offers from [Clapsaddle's attorney] to negotiate with Di Ferrante."

These allegations do not give rise to a separate breach of fiduciary duty claim. The Youngs' mere assertion that they "intend to attempt to determine if Day obtained a benefit" does not raise a fact issue as to whether Day received an improper benefit, an element of the claim of breach of fiduciary duty. *Id.* at 693 (noting that claims of breach of fiduciary duty against attorney focus on whether attorney obtained improper benefit from representing the client and involve integrity and fidelity of attorney); *Beck*, 284 S.W.3d at 429. Speculative and conclusory statements are insufficient to raise an issue to defeat summary judgment. *See Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *Gibson v. Methodist*, 822 S.W.2d 95, 100 (Tex. App.—Houston [1st Dist.]

1991, writ denied). Absent an allegation that Day actually received an improper benefit, the Youngs' assertions that Day promised to sue CLRH when he had no intention of doing so, refused to settle the Clapsaddle lawsuit, and disclosed confidential communications do not state a claim for breach of fiduciary duty. *See Kemp v. Jensen*, 329 S.W.3d 866, 872 (Tex. App.—Eastland 2010, pet. denied) (concluding that, absent allegation that attorney had received improper benefit, plaintiffs' contention that attorney had engaged in deceptive conduct by failing to disclose to plaintiffs that he had sued wrong entity stated claim for professional negligence rather than breach of fiduciary duty); *West v. Hubble*, No. 05–06–01683–CV, 2008 WL 2941854, at *2 (Tex. App.—Dallas Aug. 1, 2008, pet. denied) (mem. op.) (claims that attorney agreed with opposing counsel to modify settlement agreement without client's knowledge or consent after representation did not constitute breach of fiduciary duty but was legal malpractice claim); *Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ) (finding no evidence to indicate unfairness or deception in attorneys' use of confidential information to support claim for breach of fiduciary duty, but instead found allegation of improper disclosure of confidential information was merely claim for legal malpractice).

### 3. Fraud

The Youngs rely on the same alleged misconduct discussed above as the basis for their fraud claim. In their summary judgment response, they argued that a genuine issue of material fact existed as to whether Day promised to sue CLRH and either decided not to sue without informing the Youngs or never intended to bring suit. Allegations concerning an attorney's delay or failure to handle a matter entrusted to the attorney give rise to a claim for professional negligence. *See Murphy*, 241 S.W.3d at 698–99. Despite the Youngs' claim of Day's intentional misrepresentation, this is a claim for professional negligence. *Samson v. Ghadially*, No. 14-12-00522-CV, 2013 WL 4477863, at *4 (Tex. App.—Houston [14th Dist.] Aug. 20, 2013, no pet.) (mem. op.) (concluding plaintiff's claims that attorney told him that he would prosecute medical malpractice claim, and later avoided contact with plaintiff, did not file lawsuit, and dismissed plaintiff as client shortly before expiration of limitations period stated claim for professional negligence); *Meullion v. Gladden*, No. 14–10–01143–CV, 2011 WL 5926676, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.) (concluding client's claims for fraud, breach of fiduciary duty, and breach of contract were claims for professional negligence where client alleged attorney drafted habeas petition that attorney "knew would fail").

11

## 4. DTPA

In their original brief, the Youngs argue that the trial court erred in granting summary judgment on their DTPA claim because Day did not seek dismissal of the DPTA claim in his summary judgment motion. In their reply brief, they contend that the allegations underlying their DTPA claim are not the same as those alleged in support of their other claims and, therefore, they have not fractured their DTPA claim.

After Day filed his summary judgment motion, the Youngs filed a supplemental petition to include a DTPA claim. Day contends that although his summary judgment motion did not expressly address the Youngs' DTPA claim because the Youngs had not made the claim before he filed his motion, the allegations underlying their DTPA claim are the same as those alleged in their other claims and are not distinct from their negligence claim. Thus, he argues, the anti-fracturing argument presented in his summary judgment motion was sufficiently broad to encompass the Youngs' DTPA claim and therefore he was not required to amend the motion. We agree.

Generally, a party may not be granted summary judgment on a claim not addressed in a summary judgment proceeding. *See Bauer-Pileco, Inc. v. Harris Cty. Appraisal Dist.*, 443 S.W.3d 304, 314 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 414 n.15 (Tex. App.—Houston

12

[14th Dist.] 2013, pet. denied). Nevertheless, summary judgment may be proper when the original motion is broad enough to encompass the newly asserted claims. *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

In their supplemental petition, the Youngs alleged that Day engaged in unconscionable conduct in violation of DTPA section 17.50(a)(3) by (1) divulging to Di Ferrante confidential communications between the Youngs and Day and communications regarding settlement offers made to the Youngs and (2) failing to relay the $200,000 settlement offer to them. The Youngs alleged these same facts in support of their other claims.[2] *See West*, 2008 WL 2941854, at *2; *Judwin Props., Inc.*, 911 S.W.2d at 506. By establishing that the Youngs were not permitted to fracture their legal malpractice claim into a breach of fiduciary claim, Day's motion was sufficiently broad to encompass the Youngs' later-filed DTPA claim based on the same allegations. *See Reule*, 407 S.W.3d at 414 n.15; *see also Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013) (holding traditional summary judgment challenge to duty element of social host liability claim broad enough to encompass duty element of negligent undertaking claim).

---

[2] In their brief, the Youngs state that "[t]they amended their pleadings to include fraud, breach of fiduciary duty, and DTPA violations, all based on the fraudulent, and extremely negligent act of failing to convey a critical settlement offer to plaintiffs on the eve of trial."

In summary, we conclude that the allegations upon which the Youngs rely to support their breach of fiduciary duty, fraud, and DTPA claims are nothing more than their claims for professional negligence under alternative labels. Accordingly, the trial court did not err in concluding that these claims constituted impermissible fracturing of the Youngs' professional negligence claim.[3]

### 5. Professional Negligence Claim

The Youngs argue that the trial court erred by granting summary judgment on their professional negligence claim against Day. In support of their claim, they alleged that Day failed to file suit against CLRH before the statute of limitations expired. In the Clapsaddle lawsuit, they alleged that Day failed to call certain witnesses to testify at trial, designate his own expert medical witness, and convey the $200,000 settlement offer to them. We examine each of these grounds below.

### a. Applicable Law

To prevail on a legal malpractice claim, a plaintiff must show "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach

---

[3] Because the Youngs present no argument as to why their claims for breach of contract and negligent misrepresentation are distinct from their professional negligence malpractice claim and therefore not subject to the anti-fracturing rule, they have not preserved this issue for our review. *See Kris William, Inc. v. Tranquility Lakes Owners Ass'n, Inc.*, No. 01-13-00934-CV, 2015 WL 5770019, at *5 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.) (concluding plaintiffs' failure to challenge summary judgment grounds regarding claim required court to affirm summary judgment as to that claim).

14

proximately caused the plaintiff's injuries, and (4) damages occurred." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). Claims for legal malpractice are based in negligence and are governed by the two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2014). A legal malpractice claim accrues when the client sustains a legal injury or when the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of the claim. *See Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1998); *Nowak v. Pellis*, 248 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### b. Failure to Timely File Suit Against CLRH

In their amended petition, the Youngs alleged, in relevant part:

Approximately two months prior to September 28, 2009, Day on behalf of [Dwayne R. Day, P.C.], and Plaintiffs entered into an oral agreement for Defendants to sue CLRH for Plaintiffs.[4] When Day had not filed suit and the statute of limitations was fast approaching, Doris called Day [approximately one day before the limitations deadline], who falsely claimed that he never told Plaintiffs that he would file suit on their behalf for CLRH. Day, believing that Plaintiffs might file a pro se petition suing CLRH, told Plaintiffs that they would have to send a 75-day letter to extend the statute of limitations, which was due to expire on September 28, 2009. Day never told Plaintiffs what they needed to include in the letter or what they needed to do. Day[']s false statements and delaying tactics caused Plaintiffs to miss the deadline to sue CLRH.

---

[4]     The Youngs claimed that Donald suffered residual effects from the vehicular accident and was admitted a second time to CLRH on September 28, 2007, and that he suffered additional injuries while a patient at the hospital.

Based on these allegations, it is clear that the Youngs were aware that the limitations period on filing suit against CLRH was set to expire on September 28, 2009. The Youngs' alleged injury therefore accrued on September 29, 2009, the day after limitations expired. Since the applicable statute of limitations is two years, the Youngs had to bring their legal malpractice claim against Day based on his failure to file suit against CLRH no later than September 29, 2011. However, the Youngs did not file suit against Day until October 8, 2014 (and did not request service of the suit on Day until February 16, 2015)—more than five years after their CLRH-related claim accrued.

The discovery rule does not apply to the Youngs' claim relating to Day's failure to sue CLRH because the Youngs admitted in their petition that Doris was aware that Day denied having agreed to sue CLRH on the Youngs' behalf, and that the deadline to file suit would expire on September 28, 2009. The Youngs' professional negligence claim based on Day's failure to sue CLRH is barred by limitations.

### c. Failure to Designate Medical Expert and Call Certain Witnesses, Consideration of Youngs' Creditors' Judgments When Advising About Settlement, and Disclosure of Confidential Information

In support of their professional negligence claim in the Clapsaddle lawsuit, the Youngs also alleged that Day failed to designate an expert medical witness to testify at the trial of the Clapsaddle lawsuit about Donald's injuries and past and

16

future pain and suffering, instead opting to use the videotaped deposition testimony of Clapsaddle's medical expert. They also complained that Megan Cools, the emergency medical technician who responded to the scene of the accident, was permitted to testify through her prior videotaped deposition rather than in person, and that Day never called as a witness the police officer who cited Clapsaddle as being at fault in the accident. They further alleged that Day improperly considered Di Ferrante's judgments against the Youngs when advising them about settlement as well as improperly disclosed confidential settlement information and other attorney-client privileged information to Di Ferrante.

A review of the record reveals that the Clapsaddle lawsuit was tried on September 7, 2010. The jury rendered its verdict on September 9, 2010, and the trial court entered a take-nothing judgment against the Youngs on February 1, 2011. The Fourteenth Court of Appeals affirmed the trial court's judgment on June 14, 2012, and denied the Youngs' motion for rehearing on August 22, 2012. No further appeal was sought. Based on these facts, the Youngs had to file suit on these claims arising out of the Clapsaddle lawsuit no later than August 22, 2014, or at the latest, by October 6, 2014, which was forty-five days after the Youngs' motion for rehearing

was denied.[5]  They did not file suit until October 8, 2014—more than two years after limitations for legal malpractice ran.

Further, neither the discovery rule nor the *Hughes*[6] rule tolls the statute of limitations as to these claims.  The Youngs alleged that in the course of Day's representation of them in the Clapsaddle lawsuit, "they were frustrated with him about the fact that he would promise to do things he did not do," including failing to designate an expert medical witness and call Cool or the responding officer as witnesses at trial, considering the Youngs' judgment creditors when advising them about settlement, and disclosing confidential information to Di Ferrante.  Because the Youngs knew of these alleged facts giving rise to their negligence claim during Day's representation, the discovery rule does not apply.  The *Hughes* rule tolls the statute of limitations of a legal malpractice claim "until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded." *Apex Towing v. Tolin*, 41 S.W.3d 118, 121 (Tex. 2001).  Here, the Youngs' appellate remedies were exhausted on August 22, 2012, or at the latest, on October 6, 2012.  They did

---

[5]     Under Rule of Appellate Procedure 53.7, a party must file a petition for review with the Texas Supreme Court within forty-five days after the date the court of appeals rendered judgment or the date of the court of appeals' last ruling on all timely filed motion for rehearing or en banc reconsideration.  *See* TEX. R. APP. P. 53.7.

[6]     *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991).

18

not file suit until October 8, 2014. Therefore, these claims arising against Day out of the Clapsaddle lawsuit are time barred.

### d. Failure to Convey $200,000 Settlement Offer

In support of their professional negligence claim, the Youngs also alleged

> After Defendants answered this suit, Plaintiffs' attorney, Ronald M, Hall ("Hall"), received two Adobe Acrobat pdf files purporting to be a contract and refusal of settlement offer allegedly signed by Plaintiffs. Plaintiffs knew that they had never signed a contract with Day and they knew that Day had never told them that he had received a settlement offer of $200,000.

The Youngs each executed a sworn, notarized affidavit in which they averred, among other things, that they had not been told about the $200,000 settlement offer, that they had not signed the September 6, 2010 settlement memorandum reflecting their refusal to accept the offer and their desire to proceed to trial, and that they would have accepted the $200,000 offer. These affidavits were attached as exhibits to their summary judgment response.

The Youngs argue that the trial court erred in granting summary judgment because their affidavits were competent summary judgment evidence that raised a genuine issue of material fact as to whether Day breached his duty by failing to inform them of the settlement offer. They assert that because they were not aware of the settlement offer until Day produced the memorandum in April 2015, the discovery rule tolled their professional negligence action based on this claim.

19

The September 6, 2010 memorandum from Day to the Youngs states, in relevant part:

> In light of the following factors, I, Dwayne R. Day, am recommending that the Young's [sic] settle this matter and avoid going to trial on 9/7/2010 at 9am in Galveston County:
>
> 1. The defendant is offering to settle this matter for $200,000[.]
>
> . . . .
>
> Therefore, I believe that the current offer on the table is a very good offer under the circumstances and I am recommending that the Young's [sic] accept the offer in full and final settlement of this matter. However, if the Young's [sic] choose to ignore my advice and "put this in the hands of the jury" I will honor their wishes and, to the best of my ability, try to obtain a favorable outcome for all.
>
>                           Dwayne R. Day
>                           _____        9/6/10
>
> Receipt of this Memorandum is hereby acknowledged by:
>
>                           Donald L. Young         Trial    _____
>                           _____        Settle   _____
>
>                           Doris A. Young          Trial    _____
>                           _____        Settle   _____

The document reflects that Donald and Doris signed the memorandum and initialed next to "Trial." However, in their affidavits, the Youngs swear under oath "I was never told about the $200,000 offer from [Clapsaddle's attorney] and I never signed any document on September 6, 2010 stating that I was refusing the offer. I would have accepted the $200,000 offer."

20

Day contends that the Youngs' affidavits do not preclude summary judgment because (1) the Youngs' summary judgment response was deficient; (2) even assuming that a fact issue exists as to whether Day failed to inform the Youngs about the settlement offer, the Youngs failed to present expert testimony that the alleged failure breached the applicable standard of care; (3) a fact issue does not exist because a trial court does not have to consider summary judgment evidence that is unreasonable or incredible; and (4) the statements in the Youngs' affidavits do not raise a fact issue.

With regard to the argument that the Youngs' summary judgment response was deficient, Day asserts that other than incorporating the affidavits into their response, they neither cited to nor explained the applicability of the affidavits. In their summary judgment response, the Youngs stated that after Day filed his answer, they received a pdf file of the September 6, 2010 memorandum purporting to be their refusal of the $200,000 settlement offer. They further stated that Day had never told them that he had received a settlement offer of $200,000. They argued that "[t]here is a genuine issue of material fact as to whether Donald and Doris knew about the $200,000 settlement offer which they have denied and which they deny signing the refusal of the settlement on September 6, 2015 [sic]." The Youngs' summary judgment response to which their affidavits were attached was not deficient in this regard.

21

With regard to his second argument, Day contends that even assuming a fact issue exists as to whether he failed to inform the Youngs about the settlement offer, the Youngs failed to present expert testimony that a failure to convey the offer breached the applicable standard of care. He argues that he knew that the Youngs wanted to have any settlement structured so that they could unethically and illegally avoid their creditors. He asserts that he knew that the Youngs would not approve any settlement that paid Di Ferrante for his judgments because they believed that his judgments against them were invalid. Day argues that because of these allegedly unethical and illegal motives on the part of the Youngs, he did not have an automatic duty to inform them of the settlement offer. Day argues that the Youngs were required to present expert testimony that Day had such a duty under the circumstances and breached that duty.

A summary judgment movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. A defendant moving for traditional summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *See Sci. Spectrum*, 941 S.W.2d at 911. As the movant, Day bore the burden to disprove that he owed a duty to the Youngs to convey the settlement offer to him or that he

22

breached that duty. Day did not bring forward expert testimony to explain why he had no duty to inform the Youngs of the settlement offer based on their alleged unethical and illegal motives. Therefore, the Youngs were not required to bring forth expert testimony themselves. *Zenith Star Ins. Co. v. Wilkerson*, 150 S.W.3d 525, 530–31 (Tex. App.—Austin 2004, no pet.) ("Once the defendant in a legal malpractice suit has submitted expert testimony on the standard of care, the plaintiff is then required to controvert the expert testimony with other expert testimony.") (citing *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991)); *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex. App.—San Antonio 1995, writ denied) (noting that once expert opinion established that defendant attorney's acts conformed to standard of care, plaintiff must offer expert testimony to contradict defendant's expert testimony).[7]

---

[7] In a post-submission letter, Day asserts that the recent decision by the Texas Supreme Court in *Rogers v. Zanetti* is analogous to the present case. *See* __ S.W.3d __, 2017 WL 1553154 (Tex. Apr. 28, 2017). In that case, Rogers sued his former attorneys and their law firm for legal malpractice arising out of a failed investment by Rogers in a home healthcare company. *See id*. at *1. Rogers alleged that the defendant attorneys were negligent because, among other things, they failed to communicate a settlement offer to settle the case and transfer full ownership of the business to Rogers for $450,000. *See id*. at *12. The Supreme Court concluded that Rogers's testimony "that he would have tried to settle the case had he known about the offer" was no evidence that Rogers would have settled the underlying suit for $450,000. *Id*. The *Rogers* decision is distinguishable from the case before us. There, the Court rejected Rogers's argument that "evidence of the offer's existence and his willingness to explore settlement was sufficient to raise a fact issue" on causation and defeat summary judgment. *Id*. Here, in contrast, the Youngs averred in their affidavits, "I would have accepted the $200,000 offer."

23

Day also argues that no fact issue exists because a trial court does not have to consider summary judgment evidence that is unreasonable or incredible. Day argues that the Youngs' claim that Day failed to inform them about the $200,000 settlement offer is nonsensical given their allegation that Day "just wanted them to settle for any amount," and the fact that the offer would have provided Day a contingency fee instead of having to try their problematic personal injury claim. Day further argues that this theory is even more absurd in light of Day's handwriting expert's opinion that the signatures on the September 6, 2010 memorandum belonged to the Youngs. Thus, he argues, because no reasonable juror could believe the evidence that Day withheld the settlement from the Youngs, no fact issue exists and Day conclusively disproved the Youngs' claim.

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller,* 168 S.W.3d at 816. We are required by the law to take the non-movant's competent evidence as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in favor of the non-movant. *Diversicare*, 185 S.W.3d at 846. An appellate court is not allowed to weigh the credibility of witnesses and we cannot, on our own, conclude that no reasonable juror could believe the Youngs' sworn denial of their signatures on the relevant documents. *See City of Keller*, 168 S.W.3d at 819 (noting it is province of jury to resolve conflicts in evidence). Day has not conclusively

24

disproved their claim of non-signature which is inherently within the province of the trier of fact.

Finally, Day argues that the Youngs' actual statements in their affidavits do not raise a fact issue. Day contends that "[t]the Youngs, aware of the ramifications of perjury, meticulously worded their affidavits so as to try and raise a fact issue without denying that they received and signed the memorandum." In support of this argument, Day points to the fact that the Youngs' assertions in their affidavits that "I was never told about the $200,000 offer from Mr. Fanaff and I never signed any documents on September 6, 2010 stating that I was refusing the offer," are true because the memorandum states that Clapsaddle (not Fanaff) made the settlement offer, and there is no express language in the memorandum whereby the Youngs stated that they were refusing the offer (instead, they signed and initialed on the line indicating that they wanted to proceed to trial). Thus, Day claims, the Youngs' affidavits do not actually contradict their having signed the memorandum and do not create any fact issues. We cannot adopt such a strained reading of the Youngs' affidavits. *See Diversicare*, 185 S.W.3d at 846.

In summary, after applying the rule against fracturing, we conclude that the Youngs' only claim was for professional negligence, and that this claim was based on the allegations that Day failed to (1) file suit against CLRH before the statute of limitations expired; (2) call certain witnesses to testify at trial or designate his own

expert medical witness; and (3) convey the $200,000 settlement offer to them. We conclude that the trial court properly granted summary judgment on the Youngs' professional negligence action based on the first two allegations because these claims are barred by the statute of limitations. As for the remaining allegation that Day failed to convey the $200,000 settlement offer to the Youngs, we conclude that the trial court erred in granting summary judgment because Day has not established as a matter of law that he was entitled to summary judgment. Accordingly, we sustain the Youngs' first issue in part and overrule it in part.[8]

**Discovery Motions**

In their second issue, the Youngs argue that the trial court abused its discretion in failing to rule on certain of their discovery motions prior to granting summary judgment on their claims. Having concluded that Day was not entitled to summary judgment on a portion of the Youngs' professional negligence claim, the case must be remanded to the trial court for further proceedings. Thus, we do not reach the issue of whether the trial court abused its discretion in failing to rule on the Youngs' discovery motions prior to granting summary judgment.

---

[8]   Because the Youngs have not challenged the summary judgment granted as to their claim for declaratory relief, they have waived this issue for appellate review. *See Kris William, Inc.*, 2015 WL 5770019, at *5.

26

## Conclusion

We affirm the trial court's judgment in part, reverse in part, and remand for additional proceedings consistent with this opinion.


Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.